(163 App. Div. 725)

PEOPLE ex rel. ROBIN v. HAYES, Warden.   (No. 189–27.)

(Supreme Court, Appellate Division, Third Department.   September 9, 1914.)

1. HABEAS CORPUS (§ 113*) — APPEAL — DISMISSAL — GROUNDS — ACADEMIC QUESTION.

Where a prisoner brought habeas corpus against the warden of the prison in which he was confined, claiming the right to his release by reason of an alleged pardon, the validity of which was denied by the warden, and after the expiration of his term of imprisonment appealed from an order quashing the writ, the appeal would not be dismissed on the ground that the question involved had become academic by the expiration of the term, since, if the prisoner was in fact pardoned, he was fairly entitled to the benefits of the pardon, and, while habeas corpus might not be the most satisfactory method of raising the question, the question underlying the prisoner's claim should be finally disposed of.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 102–115; Dec. Dig. § 113.*]

2. STATES (§ 52*) — IMPEACHMENT OF GOVERNOR — CONCLUSIVENESS OF JUDGMENT.

The judgment of the Court for the Trial of Impeachments, removing a person from the office of Governor of the state, is conclusive as to the validity of the impeachment of the Governor by the Assembly.

[Ed. Note.—For other cases, see States, Cent. Dig. §§ 43, 57; Dec. Dig. § 52.*]

3. PARDON (§ 4*)—GOVERNOR—AUTHORITY TO PARDON—"DE FACTO GOVERNOR" —"DEVOLVE."

Under Const. art. 4, § 5, providing that the Governor shall have power to grant pardons, and section 6, providing that, in case of impeachment of the Governor, the powers and duties of the office shall devolve upon the Lieutenant Governor for the residue of the term, or until the disability shall cease, while the impeachment of a Governor by the Assembly did not deprive him of the office, the powers and duties of the office devolved upon the Lieutenant Governor pending the trial of the charges, and an attempt thereafter by the Governor to exercise the pardoning power was not valid as an act of a de facto Governor, since a "de facto Governor" is an actual Governor in fact and reality, as distinguished from a Gov-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ernor de jure or by right, while to "devolve" means to transfer from one person to another, to deliver over, or to hand down.

[Ed. Note.—For other cases, see Pardon, Cent. Dig. §§ 4–6½; Dec. Dig. § 4.*

For other definitions, see Words and Phrases, First and Second Series, De Facto Officer; Devolve.]

Smith, P. J., dissenting in part.

Appeal from Special Term, Ulster County.

Habeas corpus by the People, on relation of Joseph G. Robin, against Patrick Hayes, Warden of the Penitentiary Prison at Blackwell's Island, N. Y. From an order (82 Misc. Rep. 165, 143 N. Y. Supp. 325) quashing the writ, and an order denying the relator's application for a renewal, rehearing, and reargument, the relator appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Robert D. Ireland, of New York City (Benjamin F. Tracy and Anthony J. Ernest, both of New York City, of counsel), for appellant.

Frank L. Polk, Corp. Counsel, of New York City (Terence Farley, of New York City, of counsel), for respondent.

WOODWARD, J. On the 30th day of August, 1913, William Sulzer, claiming to act in the capacity of Governor of the state of New York, made and executed an instrument in writing in which, after the recital of the conviction and sentence of Joseph G. Robin for the crime of grand larceny, he declares:

"Therefore, know ye, that we have pardoned, remised and released, and by these presents do pardon, remise and release, the said convict, of and from the offense whereof in our said court he stands convicted as aforesaid, and of and from all sentences, judgments and executions thereon. In testimony whereof, we have caused these our letters to be made patent and the seal of our state to be hereunto affixed."

This instrument is signed by William Sulzer, attested by Chester G. Platt, "Secretary to the Governor," and bears the executive privy seal. A copy of this alleged pardon was presented to the defendant on the 2d day of September, 1913, and was refused recognition, as he alleges in his amended return—

"for the reason that said William Sulzer, as I am advised and believe, had no power or authority to make, sign, or issue said alleged pardon, or to do any act or thing requisite to entitle the said Joseph G. Robin to discharge from my custody in said New York County Penitentiary; the said William Sulzer having been heretofore and on the 12th day of August, 1913, and before the said William Sulzer assumed to make, sign, and issue said alleged pardon, impeached by the Assembly of the state of New York," etc.

On the 9th day of August, 1913, before the date of this alleged pardon, the relator had verified a petition for a writ of habeas corpus, and, after due proceedings, this writ was, on the 13th day of September, 1913, quashed, and an order to that effect was duly entered upon the same day, and an appeal was taken from that order on the same

date, but was never prosecuted. The relator's imprisonment expired on the 10th day of January, 1914, and on the 28th day of that month the relator made an application—

"for a renewal, rehearing, and reargument of the proceeding upon the return of the writ of habeas corpus heretofore heard and determined * * * upon the ground that the relator has since said argument discovered additional facts and evidence which should be considered by the court and which would tend to change the decision," etc.

This application was denied, and the relator appeals from both orders.

[1] We are asked to dismiss this appeal on the ground that, the relator now being at large, the question involved is academic—that no rights of his are involved. We are unwilling to make this disposition of the case. If the relator was in fact pardoned, he is fairly entitled to the benefits of that act of grace in his way back to his place in society, and, while habeas corpus may not be the most satisfactory method of raising the question at this time, it seems wise, in view of all the circumstances, to finally dispose of the question underlying the claim of the relator.

[2] The appellant recognizes that the judgment of the Court for the Trial of Impeachments, entered on the 17th day of October, 1913, removing William Sulzer from the office of Governor of the state, has finally disposed of all of the questions relating to the validity of the original impeachment made on the 12th day of August, 1913, and exhibited to the Senate on the following day. 2 Court for Trial of Impeachments, 1767, 1777. And this court is committed to the same doctrine in People ex rel. Sulzer v. Sohmer, 162 App. Div. 921, 146 N. Y. Supp. 1108.

[3] It is suggested, however, that a pardon issued by a Governor de facto is valid, the case of Ex parte Norris, 8 S. C. 408, being relied upon to support this contention, and it is contended that William Sulzer, holding physical possession of the office, and assuming to act in granting the pardon in question, was such de facto Governor, and that the failure of the respondent to recognize such action and to give the relator his liberty involved a substantial right of the latter, which demands redress at the hands of this court. We shall not, at this time, question the ruling of the distinguished court of South Carolina that a "pardon issued by a Governor de facto is valid," nor shall we quarrel with the authority cited, nor with the conclusion that the "rule does not depend on the extent of the powers existing in the crown, but on the character of those powers"; that the rule is based on the "ground that there should always be one capable of administering the laws at the head of the government." Indeed, we should be disposed to agree with the position taken by the learned court of South Carolina if William Sulzer was a de facto Governor at the time of making and issuing the pardon to the relator. The difficulty is that he was not a de facto Governor; there was "one capable of administering the laws at the head of the government" by reason of a constitutional provision made to meet just such a situation as arose in the summer of 1913 in this state.

By section 1 of article 4 of the state Constitution it is provided that:

The "executive power shall be vested in a Governor, who shall hold his office for two years; a Lieutenant Governor shall be chosen at the same time, and for the same term."

Sections 2 and 7 of the same article provide that the qualifications of the Governor and Lieutenant Governor shall be the same, and section 5 provides that:

The "Governor shall have the power to grant reprieves, commutations and pardons after conviction, for all offenses except treason and cases of impeachment," etc.

Section 6 of the same article then provides that:

In "case of the impeachment of the Governor, or his removal from office, * * * the powers and duties of the office shall devolve upon the Lieutenant Governor for the residue of the term, or until the disability shall cease."

It will thus be seen that there is no moment of time when William Sulzer, the duly elected Governor of the state of New York, could have been a de facto Governor. He held the office de jure, or of right, from the 1st day of January, 1913, to the 12th day of August of the same year. Upon that day the Assembly preferred articles of impeachment against William Sulzer as Governor, and upon that day, under the Constitution of this state, the "powers and duties of the office" devolved upon the Lieutenant Governor, and when the Court for the Trial of Impeachments found William Sulzer guilty of some of the matters charged, and removed him from the office of Governor on the 17th day of October, 1913, those powers and duties were continued in the Lieutenant Governor "for the residue of the term." The impeachment did not deprive William Sulzer of the office of Governor; it merely devolved the "powers and duties of the office" upon the Lieutenant Governor pending the trial of the charges; it suspended the powers and duties of the office in William Sulzer, and transferred them temporarily to Martin H. Glynn, possessing all of the qualifications required by the Constitution for the discharge of those powers and duties, and these became of a permanent character after the judgment removing William Sulzer from office. A de facto Governor is an actual—in fact, in reality—Governor, as a "king de facto, distinguished from a king de jure, or by right." Webster. And where the Constitution itself provides that the "powers and duties" of the Governor de jure shall devolve upon another under given circumstances it is futile to contend that the acts of such Governor are those of a de facto officer after the devolution has taken place. To devolve is to "transfer from one person to another; to deliver over; to hand down" (Webster); and this transfer of the powers and duties of the office of Governor, where the latter is under impeachment, is by operation of law; it is the condition under which William Sulzer accepted the office at the hands of the people of the state, and from the moment articles of impeachment were adopted he was shorn of all of the powers and duties of the office of Governor, and those powers became vested in the Lieutenant Governor. There was no interregnum; at the moment the powers and duties

passed out of William Sulzer they passed into the control of Martin H. Glynn, and the former had no more authority to grant a pardon than he had to perform any other function of the office. William Sulzer was Governor de jure, or of right, until he was removed from office, but from the moment of the adoption of the articles of impeachment he became functus officio; he had discharged all of the duties permitted by the Constitution, and his powers were at an end, until the Court for the Trial of Impeachments had passed upon the charges. The attempted pardon was issued subsequent to the impeachment, and could not, therefore, give the relator any rights.

The orders appealed from should be affirmed. All concur, except SMITH, P. J., who writes for dismissal.

SMITH, P. J. (concurring). I concur in the opinion of Mr. Justice WOODWARD in so far as he holds that Governor Sulzer was not a de facto governor at the time of the attempted granting of the pardon to relator. I do not understand that it is claimed that he was then a de jure governor. Upon his impeachment his powers and duties devolved upon the Lieutenant Governor under section 6 of article 4 of the Constitution. By section 13 of article 6 of the Constitution the word "impeachment" seems to be defined as the act of the Assembly in presenting by a majority vote articles of impeachment to be tried by the Court of Impeachment to be thereafter formed. I also am of opinion that inasmuch as the term of relator's imprisonment has expired, and as the object of this writ is to relieve relator from unlawful imprisonment, the matter has now become academic and the relator's rights should be determined in some other proceeding, when the determination can be effective to secure to him such rights as he may lawfully have under the paper claimed by him to be a pardon. I, therefore, vote to dismiss the appeal.