In the Matter of the TOWN OF CLAY, Petitioner, *v.* ROBERT D. HELSBY et al., Constituting the Public Employment Relations Board, et al., Respondents.

Fourth Department, July 5, 1974.

*Dennis G. O'Hara* (*Edward A. O'Hara, III,* of counsel), for petitioner.

*Martin L. Barr* for respondents.

SIMONS, J.   Petitioner Town of Clay seeks to reverse a determination of the Public Employment Relations Board which found that it committed improper employer practices by violating section 209-a (subd. 1, par. [d]) of the Civil Service Law refusing to negotiate with Service Employees International Union, Local 200, AFL-CIO and also section 209-a (subd. 1, pars. [a], [b], [d]) of the Civil Service Law improperly interrogating the employees of the town Highway Department.

The first charge, failure to negotiate, necessarily rests upon the finding of the hearing officer, affirmed by the board, that the town had recognized Local 200 as an employee organization. It is not contended that the town extended recognition by a formal legislative act but rather that there was a *de facto* recognition and that the failure to negotiate with Local 200 thereafter was an improper employer practice.

The history of the proceeding started sometime in the late summer or early fall of 1971 when Samuel Villani, secretary-treasurer of Local 200, informed the former Town Supervisor, Earl S. Butterfield, that Local 200 represented a majority of

the town's Highway Department employees. After some discussion, Butterfield wrote Villani on October 14, 1971 stating that he required proof of Villani's claim. Villani and Butterfield met a few days later and agreed to submit the employees' application cards to a Town Justice for authentication of the signatures. Butterfield testified that he advised the Town Board at a private " caucus " of these initial contacts and the agreement to have the Town Justice authenticate the signatures.

On October 20, 1971 the Justice sent a letter to Butterfield and Local 200 verifying the signatures. The following day the union sent a letter to Butterfield containing " a no strike affirmation and commitment " (see Civil Service Law, § 207, subd. 3). Without prior consultation with the Town Board, Butterfield sent a letter dated November 8, 1971 advising the union that the town was " prepared to accept " the union as bargaining agent. Shortly thereafter Butterfield met with Villani and the Superintendent of the Highway Department to discuss the agreement of a nearby town which was similar to that sought by Local 200 for employees of the Town of Clay. All of this occurred without the Town Board's direction and prior to a mid-November caucus at which Butterfield advised the Town Board of the verification of the signatures and his letter of November 8. According to Butterfield, the members of the board at that caucus notified him in no uncertain terms that they did not intend to recognize Local 200. Within a day or two Butterfield notified Villani by telephone of the town's position and told him that Local 200 would have to wait until after January 1, 1972 to negotiate with the newly elected Supervisor and Town Board. On December 27, 1971 a public meeting of the Town Board was held at which Villani requested the board to recognize the union. The minutes indicate that no vote was taken and the board's only action on the request was described as follows: " The Town Board said to tell Mr. Villani to wait until next year to negotiate as it was too late this year." No contract has been executed between the town and Local 200.

Representation status for public employees may be effected either by recognition by the public employer or by certification (Civil Service Law, § 204; and see Rules of the Public Employment Relations Board, §§ 200.7 and 200.8 [4 NYCRR 200.7 and 200.8]). Recognition is a designation by the public employer of the employee organization with which it chooses to bargain. It is distinguished from certification which is the designation of an employee organization as negotiating representative by PERB or by a local impartial agency. After certification or

recognition, the employer must negotiate with the employee organization and agree upon the terms and conditions of employment (Civil Service Law, § 204, subd. 2).

The decision of PERB is based upon a finding that recognition resulted from the actions of the Town Board, not those of Butterfield[1]. The hearing officer found that there was "no direct evidence to establish that the Supervisor was expressly authorized to so act on behalf of the Town Board." He based recognition upon the Board's acquiescence in Butterfield's acts. In affirming, PERB attributed recognition to this acquiescence by the Town Board followed by Butterfield's letter of "recognition" dated November 8. Its decision suggests that the Town Board extended recognition but that it was irregular in form and, therefore, valid *de facto*. However, there was no actual recognition by the Town Board in this case and the issue is really whether acceptance by the public employer may be found from the evidence before PERB.

The record does not contain substantial evidence to sustain the determination that the Town of Clay recognized Local 200. The most that can be said is that after acquiring knowledge of the Supervisor's activities with Villani, the Town Board did nothing until its meeting in mid-November. But a public employer is not required, at its peril, to take affirmative steps to reject an employee organization before it has been determined that the organization has a valid claim to representational status. The board's inaction while the situation developed was a reasonable procedure under the circumstances. It is undisputed that as soon as the Town Board became aware of the verification of the membership applications and Butterfield's letter of November 8, it immediately rejected the union. This conduct did not rise to the level of recognition.

Furthermore, the fact that Butterfield sent a letter of recognition does not add anything to the case for the simple reason that there is no evidence in the record that the Town Board knew of the letter or authorized it. As PERB recognized by refusing to base its decision on Butterfield's acts, before *de facto* effect may be given to an action, the act must be performed by the person or body having a colorable claim of authority to perform it (cf. *People ex rel. Robin* v. *Hayes,* 163 App. Div. 725, app. dsmd. 212 N. Y. 603). Butterfield did not have express power to recognize Local 200 and he did not have implied authority to bind the town by acts in excess of his powers (*Lindlots Realty*

1. The contention in respondents' brief that recognition is an "executive process" contradicts the basis of PERB's own decision.

*Corp. v. County of Suffolk,* 278 N. Y. 45, 53; *McDonald v. Mayor etc. of City of N. Y.,* 68 N. Y. 23; *Donovan v. City of New York,* 33 N. Y. 291).[2]

Municipal corporations exercise the powers delegated to them through their legislative bodies (Town Law, § 60, subd. 1; see generally 2 McQuillin, Municipal Corporations [3d ed.], § 10.27). Usually, legislative will is expressed by resolution or a legislative act appropriate to the subject under consideration (Town Law, § 63; *Matter of CSEA* v. *City of Troy,* 36 A D 2d 145, affd. 30 N Y 2d 549; *Hess* v. *Board of Educ.,* 41 A D 2d 151). We need not decide whether a formal legislative act or informal expression by the public employer is sufficient for recognition purposes under the Taylor Act because the record here is devoid of any expression by the Town Board. Before there can be recognition there must be some objective evidence of acceptance by the authority empowered to extend recognition so that determination of the facts does not depend upon conjecture. When it comes to divining the group will of a legislative body, recognition, at the least, should be visible. "A mere scintilla of evidence sufficient to justify a suspicion is not sufficient to support a finding upon which legal rights and obligations are based." (*Matter of Stork Rest.* v. *Boland,* 282 N. Y. 256, 273–274.)

The second charge concerns actions of Supervisor Firth who defeated Butterfield for election in the September, 1971 primary and took office in January, 1972. The finding of the hearing officer on this charge is supported by substantial evidence. Inasmuch as PERB did not impose separate sanctions for the two charges and the two members of the board disagreed on the issue of whether Firth's actions amounted to coercion, the matter is remitted to respondent for reconsideration of its decision and an appropriate order on Charge 2.

WITMER, J. P., CARDAMONE, MAHONEY and GOLDMAN, JJ., concur.

Determination unanimously annulled without costs and matter remitted to Public Employment Relations Board for further proceedings in accordance with opinion by SIMONS, J.

---

2. See dicta in *Matter of Civil Serv. Assn.* v. *Helsby* (21 N Y 2d 541, 549) which suggests that municipal executives probably have the right to negotiate contracts but not the ultimate power to bind the legislative body contrary to statute; and see subdivision 12 of section 201 and subdivision 1 of section 204-a of the Civil Service Law, added subsequent to the court's decision. Negotiation is clearly an administrative or executive process as distinguished from recognition or contracting. (Cf. Town Law, § 29, subd. 16 and § 64, subds. 6 and 23.)