## Payment of Tax Anticipation Notes

Department of Justice. Opinion to Hon. George H. Earle, Governor.

MARGIOTTI, Attorney General, August 29, 1935.—We have your request to be advised concerning the effect of allocations of moneys in the general fund made by the Department of Revenue to provide for the payment of tax anticipation notes which are to be issued under the provisions of the Act of June 22, 1935, P. L. 442.

The security upon which the notes authorized by the act shall be issued, the appropriation for their repayment, and the authority of the Department of Revenue to provide for such repayment are set forth in section 4 of the act, the material portion of which is as follows:

"Section 4. Any loans, negotiated under the provisions of this act, shall be secured by the current revenues, levied and assessed for revenue purposes, of every kind or character accruing to the General Fund of the State Treasury during the two fiscal years beginning June first, one thousand nine hundred thirty-five, and shall be paid out of such revenues, and so much of such revenues as may be necessary for the payment of the principal and interest of such loans are hereby specifically appropriated. The Department of Revenue shall allocate such revenues to said payments."

We understand that the Department of Revenue pro-

poses to create a sinking fund for the purpose of repaying the notes at maturity, and has allocated for such purpose certain of the current revenues of the Commonwealth accruing to the general fund during the biennium beginning June 1, 1935, by designating certain specific amounts to be set aside on certain specified dates in a total amount adequate to provide for the repayment of the notes. The department was fully authorized to make such allocations and to carry out the above proposal under the provisions of the section just quoted.

The effect of the allocations thus made is to constitute each sum so designated by the Department of Revenue a claim upon moneys which, on the date specified, have accrued to the general fund; to be paid out of, or set aside from, such fund before all other expenditures, expenses, debts and appropriations which are payable therefrom at that time. This conclusion necessarily follows from the provisions of the act itself. The current revenues of every kind or character, accruing to the general fund, are pledged for the repayment of the notes. This is coupled with the direction that the Department of Revenue shall allocate such revenues to such repayment. All of the current revenues having been thus unconditionally made available for the repayment of the notes, and the Department of Revenue having exercised the authority given to it by directing the specific setting aside of sufficient of the revenues for that purpose, obviously the pledge and repayment provided for by the legislature can only be made effective by considering the allocations absolutely payable in the manner, at the times, and in the amounts specified, ahead of all other claims payable out of the general fund.

Since the legislature has provided for the repayment of the notes by directing the Department of Revenue to make allocations of the current revenues, the prior payment of no other claim can be permitted to interfere with the allocations once made, i. e., to prevent the setting aside of any moneys in the manner specified, for other-

wise the intention of the legislature, that the notes ultimately be repaid from the current revenues as allocated by the department, would not be carried out.

The fact that the proceeds of the notes are to be used to defray the current and other expenses of the State Government confirms the validity of the conclusion just stated. Furthermore, the same fact removes all doubt as to the essential equity of the results thus obtained. The preamble of the act states, inter alia:

"Whereas, In order that the obligations of the Commonwealth for current and other expenses may be met promptly, and in order that the State government might not fail through lack of funds, it is necessary temporarily to obtain funds to defray the current and other expenses of the State government during the fiscal period aforesaid, until the revenues that will subsequently accrue to the State Treasury during the aforesaid fiscal period are available for this purpose."

And section 3 provides:

"Section 3. The proceeds derived from the negotiation of loans under the provisions of this act shall be paid into the General Fund of the State Treasury, and shall be used for the payment of appropriations made from such fund to defray the current and other expenses of the State government for the biennium beginning June first, one thousand nine hundred thirty-five."

The Supreme Court of Pennsylvania in construing the act in Kelley v. Baldwin, Auditor General, et al., 319 Pa. 53, 60, states that it "substitutes one creditor—the note holder, for another—the person to whom the Commonwealth must pay", and "there is a mere exchange of one obligation for another."

Since the moneys derived from the sale of the notes are to be used for current and other expenses payable out of the general fund, and since such expenses could not have been met without the funds so derived, it necessarily follows that the allocations of money in the general fund to provide for the payment of the notes will be preferred to

current and other expenses due at the times of the allocations.

In our study of this question we have considered the provisions of article IX, sec. 13, of the Constitution as construed by the Supreme Court in the case of Commonwealth ex rel. Schnader v. Liveright, Secretary of Welfare, et al., 308 Pa. 35 (1932).

It is our opinion that nothing contained in this section of the Constitution or in the opinion of the court relative thereto affects the validity of the conclusion we have stated above. In the Liveright case the court had before it an unbalanced biennial budget. It was accordingly necessary to consider the constitutional provisions in determining which of the appropriations making up the excessive total would have to be abated and which would have to be paid in full. For the biennium beginning June 1, 1935, no such condition exists; the total of all appropriations finally enacted and approved falls within the total of the estimated revenues.

Furthermore, in the Liveright case the legislature, in enacting the appropriation act there under consideration, did not declare or imply any intention to prefer the payment of the appropriation over all other claims against the current revenues of the Commonwealth although an intention was expressed there to prefer the appropriation in question over claims which did not constitute the current expenses of the State government.

As we have stated above, in the act here under consideration, the current revenues of every kind or character are specifically pledged to repay the notes and must be allocated for that purpose. A clear and unmistakable intent has, therefore, been expressed by the legislature to give priority to such allocations over all other claims of every nature against the current revenues.

In conclusion we are of the opinion, and so advise you, that the allocations of moneys in the general fund made by the Department of Revenue to provide a sinking fund for the payment of the tax anticipation notes are pay-

able into, and shall be set aside in, said sinking fund in the amounts and at the times specified, prior to all other expenditures, expenses, debts, and appropriations, including current expenses, payable from the general fund.

From Frederic Ray, Harrisburg.