Kelley *v.* Baldwin, Auditor General, et al.

Argued June 28, 1935.   Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*John P. Connelly,* for plaintiff.

*Charles J. Margiotti,* Attorney General, with him *Ed-
ward Friedman, Robert L. Myers, Jr.,* and *John Y. Scott,*
Deputy Attorneys General, for defendants.

Per Curiam, June 29, 1935:

This is a taxpayer's bill to restrain certain officers of the Commonwealth, and the Security Bank Note Company of Philadelphia, a corporation, from printing, executing and issuing tax-anticipation notes under the Act of June 22, 1935, and paying out any money pursuant to it. Plaintiff contends that the act is repugnant to article IX, sections 4 and 5 of the Constitution. An answer was filed. The issue is one of law.

The principal question is whether the notes, if issued, will constitute a debt of the Commonwealth within the meaning of that word as used in article IX, section 4, reading as follows: "No debt shall be created by or on behalf of the State, except to supply casual deficiencies of revenue, repel invasion, suppress insurrection, defend the State in war, or to pay existing debt; and the debt created to supply deficiencies in revenue shall never exceed, in the aggregate at any one time, one million dollars: Provided, however, That the General Assembly, irrespective of any debt, may authorize the State to issue bonds, to the amount of one hundred millions of dollars, for the purpose of improving and rebuilding the highways of the Commonwealth." (Amendment of November 6, 1923.)

Section 5 provides: "All laws, authorizing the borrowing of money by and on behalf of the State, shall specify the purpose for which the money is to be used, and the money so borrowed shall be used for the purpose specified and no other."

An act may not be declared unconstitutional unless "it violates the Constitution *clearly, palpably, plainly;* and in such manner as to leave *no doubt* or hesitation in our minds": Sharpless v. Mayor, 21 Pa. 147, 164; Tranter v. Allegheny Co. Authority, 316 Pa. 65, 75.

The challenged statute recites that the General Assembly by legislation has provided new revenues for the biennial period ending May 31, 1937, in the amount of $120,-000,000 (in addition to revenues for general purposes),

of which $60,000,000 are specifically appropriated and set aside during the first fiscal year for unemployment relief, and that the remainder of the new revenues, though due, will not be available to defray current expenses of the Commonwealth when actually necessary, or until the second fiscal year of the period; that in consequence of this delay in receiving the revenue, it will be necessary temporarily to obtain funds to defray the current and other expenses of the government during the fiscal period, until the revenues so provided for by statute become available.

The act is as follows :[1]

"WHEREAS, The present Session of the General Assembly has provided new revenues of the Commonwealth amounting to one hundred twenty million dollars ($120,000,000) in addition to other revenue for general purposes, and

"WHEREAS, Such revenues in the amount of sixty million dollars ($60,000,000) are specifically appropriated and set aside during the first fiscal year of the biennial fiscal period beginning the first day of June one thousand nine hundred thirty-five for unemployment relief, and the remainder of such new revenues amounting to sixty million dollars ($60,000,000), though due, will not be available to defray the current expenses of the State government when the same is actually necessary for that purpose, or until the second fiscal year of such period, and

"WHEREAS, The revenues, though levied and assessed, will not be available for the current expenses of the State government until the end of the first fiscal year of the

---

[1] The title of the act is "An act authorizing the Commonwealth to negotiate temporary emergency loans to defray the current and/or other expenses of the state government during the two fiscal years beginning the first day of June one thousand nine hundred thirty-five evidenced by tax anticipation notes secured by and payable from current revenues levied, assessed, collectible and/or accruing during such two fiscal years; defining the powers and duties of the governor, the auditor general and the state treasurer in relation thereto; providing for the payment of interest on and the repayment of such loans; and making an appropriation."

aforesaid biennium and the collectible revenues will not be sufficient to defray the current expenses of the State government during such fiscal year, and

"WHEREAS, The total revenues (including the aforesaid remainder of new revenues amounting to $60,-000,000) which will be available for current and other expenses of the State government and which will accrue and will be paid into the General Fund of the State Treasury during both fiscal years of the said period will be sufficient to meet such current and other expenses during such period, and

"WHEREAS, In order that the obligations of the Commonwealth for current and other expenses may be met promptly, and in order that the State government might not fail through lack of funds, it is necessary temporarily to obtain funds to defray the current and other expenses of the State Government during the fiscal period aforesaid, until the revenues that will subsequently accrue to the State Treasury during the aforesaid fiscal period are available for this purpose,

"SECTION 1. Be it enacted by the Senate and House of Representatives of the Commonwealth of Pennsylvania in General Assembly met, and it is hereby enacted by the authority of the same, That the Governor, the Auditor General and the State Treasurer, on behalf of the Commonwealth of Pennsylvania, are hereby authorized and directed during the two fiscal years beginning June first one thousand nine hundred thirty-five, from time to time to borrow on the credit of the current revenues of the Commonwealth of Pennsylvania such sum or sums of money, not exceeding in the aggregate the sum of fifty million dollars ($50,000,000), as may be necessary to defray the current and other expenses of the State government during such fiscal years.

"SECTION 2 (a). Such loans shall be evidenced by notes of the Commonwealth of Pennsylvania maturing not later than the thirty-first day of May one thousand nine hundred thirty-seven. Such notes are hereby declared to

be tax anticipation notes. Such notes, or renewals thereof, shall be issued from time to time for such total amounts, in such sums, and subject to such terms and conditions, rates of interest not in excess of four and one-half per centum (4½%) per annum, and time of payment of interest, as the Governor, Auditor General and State Treasurer shall determine and direct.

"(b). All notes issued under the authority of this act shall bear the signatures of the Governor, the Auditor General and the State Treasurer, and a facsimile of the great seal of the Commonwealth.

"(c). The current revenues of the biennial fiscal period beginning the first day of June one thousand nine hundred thirty-five are pledged for the payment of principal and interest of such notes, which shall be payable in lawful money of the United States. All notes issued under the provisions of this act shall be exempt from taxation for State and local purposes.

"SECTION 3. The proceeds derived from the negotiation of loans under the provisions of this act shall be paid into the General Fund of the State Treasury, and shall be used for the payment of appropriations made from such fund to defray the current and other expenses of the State government for the biennium beginning June first one thousand nine hundred thirty-five.

"SECTION 4. Any loans negotiated under the provisions of this act shall be secured by the current revenues levied and assessed for revenue purposes of every kind or character accruing to the General Fund of the State Treasury during the two fiscal years beginning June first one thousand nine hundred thirty-five, and shall be paid out of such revenues, and so much of such revenues as may be necessary for the payment of the principal and interest of such loans are hereby appropriated. The Department of Revenue shall allocate such revenues to said payments. The sum of Twenty Thousand ($20,000) Dollars, or so much thereof as may be necessary, is hereby specifically appropriated for the purpose of providing tax

anticipation notes and incidental expenses in connection with the issuing of the same.

"SECTION 5. The provisions of this act are severable, and if any of its provisions are held unconstitutional, the decision so holding shall not be construed to impair any other provision of this act. It is hereby declared as the legislative intent that this act would have been adopted, had such unconstitutional provision not been included therein.

"SECTION 6. This act shall become effective immediately upon its final enactment."

The power of the Commonwealth to raise revenue by taxation and the power to borrow money are dealt with in article IX of the Constitution. The fundamental principle originally applied was that, save for $1,000,000, the State must pay as it goes:[2] "the debt created to supply deficiencies in revenue shall never exceed, in the aggregate at any one time, one million dollars."

This court has not hitherto been called upon to determine the meaning of the word "debt" in section 4 in relation to the limitations obviously imposed by the scope of article IX on some of the commonly accepted meanings of the word. A different debt maximum was provided for municipalities in article IX, section 8, still, however, adhering to the rule of "pay as you go," subject to the specifically allowed exceptions. The word "debt," as used in the limitation on municipalities, has frequently come before the court for consideration, and the meaning suggested in the first case, coming up after the adoption of the Constitution, has been followed since, and is the meaning attributed to the word by most, if not all, of the states in which the question has arisen (See Dillon, Municipal Corporations, Chapter VI, sections 193-5; McQuillen, Municipal Corporations, sections 2378, 2379; note (1934), 92 A. L. R. 1299. In the Appeal of the City of Erie, 91 Pa. 398 (1879), we said: "Many authorities

---

[2] See Brooke v. Phila., 162 Pa. 123, 127.

have been cited for the defense, none of which seem to us to bear upon the point in issue. There is one, however, which we notice because of its general pertinency. In Dillon on Municipal Corporations, section 88, the learned author cites an Iowa case, involving the validity of a contract by a city for a supply of water, in which it is said: 'When a contract made by a municipal corporation pertains to its ordinary expenses, and is, together with other like expenses, within the limit of its current revenues and such special taxes as it may legally and in good faith intend to levy therefor, such contract does not constitute the "incurring of indebtedness" within the meaning of the constitutional provision limiting the power of municipal corporations to contract debts.' This, we hesitate not to say, is a sound constitutional interpretation, and in a similar case might well be adopted in the construction of our own Constitution. If the contracts and engagements of municipal corporations do not overreach their current revenues, no objections can lawfully be made to them, however great the indebtedness of such municipalities may be; for in such case their engagements do not extend beyond their present means of payment, and so no debt is created." This has since become the rule of decision. See Georges Twp. v. Union Trust Co., 293 Pa. 364, 371 et seq. and cases there cited; Scranton Electric Co. v. Old Forge Boro., 309 Pa. 73, 79, 81, 83.

We think, however, as appears to have been suggested in Keller v. Scranton, 200 Pa. 130, 133, that the word "debt" in section 4 is used in a still more limited and technical sense than in section 8 restricting action by municipalities; certainly if a municipal obligation payable out of current revenues is not a debt within section 8, tax anticipation notes payable from current revenues levied and assessed are not within the prohibition of section 4. The section is a restriction or limitation on the power of the legislature to borrow money with the exceptions clearly stated in the section (see Montgomery v. Martin, 294 Pa. 25, 34). Payment of the debt created by

the borrowing (as well as the debt existing when the Constitution was adopted) is provided for by section 11 of article IX, through the sinking fund and annual payments of not less than $250,000. The prohibited mischief was the accumulation of a state debt (subject to the $1,000,000 lee-way for deficiency in revenue) by expenditures in excess of current biennial revenue. Unless a challenged debt is within that prohibition, it is permitted. The creation of these notes for payment out of current revenue adds nothing to the state debt[3] as defined. The proceeds, by the terms of the act, will enable the Commonwealth to make prompt payment of its obligations and thus avoid conducting the government on credit until the taxes are received. The act merely provides a method of obtaining ready money in exchange for obligations not yet collectible from taxables. It substitutes one creditor, the note holder, for another, the person to whom the Commonwealth must pay. No contention is made that the act is unreasonable, and therefore prohibited by section 4, on the ground that the total amount of the anticipatory notes is so large in its relation to the contemplated receipts from the taxing laws as to be condemned as a palpable subterfuge.

During a biennium many debts in the ordinary (though not the constitutional) sense of the word must be incurred by the Commonwealth; a debt, in one sense, results from every purchase on credit of articles needed from day to day in the ordinary course of public business.

---

[3] In Graham v. Childers, 114 Okla. 38, at 41, the court said: "The words 'state debt' are shown by section 4, article X, of the Constitution, to have a fixed meaning, or to convey a definite idea of a condition; that is, it is such an obligation as the legislature is required to provide for by levying a tax to pay the annual interest and sinking fund to liquidate the principal at maturity." Section 4, article X, of the Oklahoma Constitution is as follows: "For the purpose of paying the State debt, if any, the Legislature shall provide for levying a tax, annually, sufficient to pay the annual interest and principal of such debt within twenty-five years from the final passage of the law creating the debt."

But no one would suggest that such debts are within the intendment of section 4; in these transactions both the State, as purchaser, and the seller, as creditor, deal on the faith of the implication that the purchase is necessary for the conduct of the state government pursuant to appropriation made by the legislature and that payment will be made in accordance with the appropriation; in other words, it is a transaction to be discharged out of current revenue.

When legislation provides for the levy and collection of current revenues, assets are created, though the exact amount receivable may not be determinable in advance. The Act of 1935 refers to statutes providing for present taxation. As these taxes, though due, are not collectible at the moment, but only after lapse of time, it may be that, in the near future, to conduct the affairs of the government, money not in hand will be necessary, and that, later in the fiscal period, more will be available than is then required. As we understand it, the legislature intended to provide for that contingency in the emergency referred to in the act. The solution of the problem involved immediate borrowing of money to be repaid out of current revenues when received, the money borrowed meanwhile being used for the purposes specified in the appropriation laws. In that light it cannot be said that the debt of the State is increased within the terms of article IX, section 4; any more than the same thing can be said of municipal borrowing against current revenue. There is a mere exchange of one obligation for another. The total debt of the State is not increased. If such borrowing by the State is held to be a debt within section 4, we shall be overruling the cases dealing with the word "debt" in section 8 permitting municipalities to do what the State now proposes to do.

It must be understood, of course, that the limitation in section 4 has the effect, and the statute recognizes it, of limiting the issue and the payment of the tax anticipation notes to moneys received from the revenues already pro-

vided for and to become payable in the biennium. The holders of such notes can receive payment only from current revenue as heretofore decided by this court. Any deficit would be within the prohibition of section 4, unless it came within the $1,000,000 allowance for deficiency.

It is settled that statutory appropriation of money does not create an enforceable debt in all cases. In Com. ex rel. v. Liveright, 308 Pa. 35, at page 62, we said: "The result is that a debt is not and cannot be created by merely making appropriations which direct expenditures in excess of anticipated revenue, and the legislature cannot so enact. Appropriations in excess of estimated revenues and $1,000,000 are simply ineffective; they incur no liability or obligation on the part of the State; they simply abate pro rata to be within the biennium receipts and cash on hand." See, too, Georges Twp. v. Union Trust Co., 293 Pa. 364, at 371.

The main question has arisen in the following jurisdictions and the conclusion reached is that stated above: See People v. Nelson, 344 Ill. 46, 176 N. E. 59; Riley v. Johnson, 219 Cal. 513 (1933), 27 Pac. (2d) 760; 92 A. L. R. 1292, and Annotation 1299 et seq.; State ex rel. Rankin v. State Board of Examiners, 59 Mont. 557, 197 Pac. 988; Rowley v. Clark, 162 Iowa 732, 144 N. W. 908; State ex rel. Ash v. Parkinson, 5 Nevada 15; State of California v. McCauley, 15 Cal. 429, 455; In re State Warrants—Advisory opinion of the Supreme Court, 6 S. Dakota 518, 62 N. W. 101; Bryan v. Menefee, 21 Okla. 1, 95 Pac. 471; State Budget Commission v. Lebus, 244 Ky. 700, 51 S. W. (2d) 965, 967; State of Idaho v. Eagleson, 32 Idaho 276, 181 Pac. 934.

From what has been said it is clear that section 5 is not infringed.

The bill is dismissed.