[File No. 6983]

STATE OF NORTH DAKOTA EX REL. NELS G. JOHNSON, Attorney General, Plaintiff, v. C. J. MYERS, Defendant.

(19 NW2d 745)

Opinion filed Aug. 21, 1945

*Nels G. Johnson,* Attorney General, *P. O. Sathre,* Assistant Attorney General, for plaintiff.

*Francis Murphy,* for defendant.

BURKE, J. The Attorney General, in the name of the State, presented an information in the nature of quo warranto, addressed to the original jurisdiction of this court, and petitioning for the issuance of a writ of quo warranto directed to the respondent, the occupant of the office of Manager of the State Hail Insurance Department. We allowed the filing of the information and thereupon issued our writ directed to the respondent and requiring him to "show by what warrant or authority he holds or claims to hold and exercise the office of Manager of the State Hail Insurance Department of the State of North Dakota." For his return to the writ the respondent demurred to the information.

The legal basis for the challenge to respondent's right to office is the claim that he has been removed from office and holds no valid appointment thereto under the provisions of § 26–2202, Rev Code 1943. This section provides:

"The commissioner of insurance, with the approval of the governor, shall appoint a manager who shall devote all of his time to the work of the state hail insurance department and shall be in direct charge thereof . . . ."

The facts alleged in the information are admitted. The respondent was appointed to the office of Manager of the State Hail Insurance Department on December 15, 1938. The appointment (Exhibit 1) is as follows:

## "APPOINTMENT

STATE OF NORTH DAKOTA  }  ss
County of Burleigh

I, Oscar E. Erickson, Commissioner of Insurance of the State of North Dakota, do hereby constitute and appoint C. J. Myers, Manager of the Hail Insurance Department of the State of North Dakota for a term beginning December 31, 1938 to January 1, 1941.

Dated this 15th day of December, 1938.

Oscar E. Erickson
Commissioner of Insurance

William Langer
Governor

## OATH OF OFFICE

STATE OF NORTH DAKOTA  }  ss
County of Burleigh

I, C. J. Myers, do solemnly swear that I will support the Constitution of the United States and the Constitution of the State of North Dakota, and that I will faithfully discharge the duties of the office of manager of the Hail Insurance Depart-

ment of the State of North Dakota to the best of my ability, so help me God.

C. J. Myers

Subscribed and sworn to before me this 15th day of December, 1938.

L. E. Gray

Notary Public, Burleigh County, N. Dak.

My Commission expires June 6, 1941."

(Seal)

On the first Monday in January, 1939, the term of Governor Langer, who had approved the appointment, expired and he was succeeded in office by Governor Moses. Thereafter the respondent held the office of Manager of the Hail Insurance Department, without further appointment, until March 1, 1945. In the meanwhile the Commissioner of Insurance, Oscar E. Erickson, continued to be elected to that office for consecutive two-year terms. On February 27, 1945, the House of Representatives of North Dakota impeached Mr. Erickson. The resolution of impeachment was presented at the bar of the State Senate and was accepted and filed by the Senate the same day. The Senate thereupon resolved as follows:

"Whereas, By the provisions of § 198 of the Constitution of the State of North Dakota and by § 44-0908 of North Dakota Revised Code of 1943, the said Oscar E. Erickson cannot exercise the duties of said office; and there is no one authorized by law to perform the duties of his office;

Now, THEREFORE, BE IT RESOLVED by the Senate of the State of North Dakota that the public service may suffer by reason of there being no person authorized to perform the duties of the office of Commissioner of Insurance, and the Governor is hereby requested to designate some suitable person to perform the duties of said office."

This resolution was immediately transmitted to Governor Aandahl, who had succeeded Governor Moses on the first Monday in January, 1945. Governor Aandahl immediately appoint-

ed and commissioned Hon. S. A. Olsness as Commissioner of Insurance to perform the duties of the office of Commissioner of Insurance until the trial of the impeachment against Mr. Erickson was concluded. Upon the same day Mr. Olsness filed his oath of office as Commissioner of Insurance and entered upon the discharge of the duties of that office.

On February 28, 1945, Mr. Olsness at the request and direction of Governor Aandahl notified the respondent that his occupancy of the office of Manager of the State Hail Insurance Department would terminate March 1, 1945. Upon March 1, 1945, the respondent vacated the office and thereafter performed none of the duties pertaining to said office until June 15, 1945. In the interim no successor to the respondent, as such manager, was appointed.

Upon June 15, 1945, the trial of the articles of impeachment against Mr. Erickson concluded with his acquittal upon all charges. Immediately upon his resumption of the duties of the Commissioner of Insurance he issued a communication which was as follows:

(Exhibit V)

"Bismarck
June 16, 1945

TO WHOM IT MAY CONCERN:

Please be advised that I hereby appoint C. J. Myers as Acting Manager and Chief Clerk, of the North Dakota State Hail Insurance Department until further notice.

Yours very truly,

Oscar E. Erickson (signed)

Commissioner of Insurance

CC: Governor Fred G. Aandahl

Thomas Hall, Secretary of State

Otto Krueger, State Treasurer"

Upon receipt of the foregoing communication Governor Aandahl wrote to Mr. Erickson as follows:

(Exhibit IV)

"June 18, 1945

Mr. Oscar E. Erickson
Commissioner of Insurance
Capitol Building
Bismarck, North Dakota

Dear Mr. Erickson:

Section 26–2202 of the North Dakota Revised Code of 1943 provides:. "The Commissioner of Insurance, with the approval of the Governor, shall appoint a manager who shall devote all of his time to the work of the State Hail Insurance Department and shall be in direct charge thereof.

There is no legal distinction between manager and acting manager except that acting manager gives the appointing official a more gracious privilege for replacement.

I can not approve the appointment of C. J. Myers as Manager of the State Hail Insurance Department. Therefore, he is not appointed and anything that he may do in that capacity is null and void and he is not entitled to the salary of that position.

Very truly yours,

Fred G. Aandahl (signed)

FGA: md
Governor of North Dakota
Copies to:
Nels G. Johnson, Attorney General
Thomas Hall, Secretary of State
Otto Kruger, State Treasurer
C. J. Myers
Bank of North Dakota"

On June 18, 1945, the respondent filed an oath of office as Acting Manager and Chief Clerk of the State Hail Insurance Department. He reoccupied the office and began again to perform the functions of that office. On June 21, 1945, the Commissioner of Insurance wrote to the Secretary of State as follows:

(Exhibit VI)

Honorable Thomas Hall                              "June 21, 1945
Secretary of State
State Capitol
Bismarck, North Dakota

Dear Sir:

On June 16, 1945, I filed an appointment with you appointing C. J. Myers as Acting Manager of the State Hail Insurance Department of the State of North Dakota, the same appointment carrying with it an appointment as Chief Clerk. Mr. Myers filed an Oath of Office with you on the same date.

You are hereby notified that the appointment, together with the oath, is hereby withdrawn and the records will stand as if such appointment and filing of oath had never occurred.

Very respectfully yours,
Oscar E. Erickson
OEE: cb                              Commissioner of Insurance
cc: Governor Aandahl
State Treasurer
Bank of North Dakota"

Thereafter without any other appointment respondent continued and still continues to occupy the office of and to perform the duties of Manager of the State Hail Insurance Department.

The grounds upon which respondent rests his demurrer may be summarized as follows:

1. The information does not state facts sufficient to invoke the original jurisdiction of the Supreme Court.

2. The court has no jurisdiction of the subject matter for the reason that the office occupied by the respondent is not a public office.

3. That under the facts stated in the information the respondent is the legal holder of the office of Manager of the State Hail Insurance Department for the reasons (a) the statutory requirement that the appointment of the Manager of the State Hail Insurance Department be approved by the Governor is an unconstitutional limitation upon the appointive power of the

Commissioner of Insurance; (b) that the impeachment of Oscar E. Erickson did not create a vacancy in the office of Commissioner of Insurance and the person designated to perform the duties of the office during Mr. Erickson's temporary disability was not empowered to remove any of Mr. Erickson's appointees, and (c) that the legislature fixed no term of office for the Manager of the State Hail Insurance Department and that therefore his tenure of office is at the will of the appointing power, to wit the Commissioner of Insurance notwithstanding the fact that there may have been a limitation of tenure stated in respondent's original appointment.

The first question to be decided is the propriety of our assumption of original jurisdiction in this proceeding. It is not contended that we have no power to take jurisdiction. The power is conceded. It is said, however, that this controversy is not one which merits the attention of the prerogative jurisdiction of the court for the reason that the information contains no allegation of a superior right to the office in question in any person other than the respondent. Respondent cites the case of State ex rel. Langer v. Lofthus, 45 ND 357, 177 NW 755, in support of his position. However, what was said in that case is not applicable here. The Lofthus case was a suit in equity for an injunction. That remedy was not appropriate to the issues in the case for courts of equity will not interfere by injunction to determine title to office. State ex rel. Coffey v. McFarland, 57 ND 708, 223 NW 931. In the instant case, moreover, the affirmative exercise of our discretionary power rests upon broader ground than a consideration of respondent's official status alone.

A consideration of the admitted facts discloses that there is much more involved in this proceeding than the bare legal title to office. Here the state is the plaintiff. State ex rel. Linde v. Taylor, 33 ND 76, 156 NW 561, LRA1918B 156, Ann Cas 1918A 583. The issues in the case include a question of the apportionment of appointive power between constitutional officers by legislative mandate. The office involved is one of the most important appointive offices in the state. Its occupant is the

administrator of a surplus fund in excess of $3,000,000.00, and each year he supervises the collection and disbursement of large sums of money for the benefit of all of the people of the state. In State ex rel. Moore v. Archibald, 5 ND 359, 66 NW 234, and again in State ex rel. Salisbury v. Vogel, 65 ND 137, 256 NW 404, we said that our original jurisdiction to issue writs of quo warranto "is limited to cases involving the sovereignty of the state, its prerogatives or franchises, or the liberty of the citizens; this court judging for itself in each case whether that particular case is within its jurisdiction." This proceeding is well within that limitation. "The controversy is such that an immediate determination is essential for the orderly processes of government, and the maintenance of the sovereignty of the state." State ex rel. Salisbury v. Vogel (ND) supra.

Next for consideration is the contention that the office which respondent claims to hold is not a public office, title to which may be tested upon a writ of quo warranto. In State ex rel. McArthur v. McLean, 35 ND 203, 216, 159 NW 847, we defined a public office to be "a public position to which a portion of the sovereignty of the country, either legislative, executive, or judicial, attaches for the time being, and which is exercised for the benefit of the public." In other jurisdictions different rules prevail. We need not consider them, however, for we are not asked to expand or restrict the rule above set forth and the issue here presented comes within its terms. Respondent's sole contention is that the office of Manager of the State Hail Insurance Department is not a public office for the reason that no portion of the state's sovereignty attaches to it. He says that in operating the State Hail Insurance Department the state acts in a private as distinguished from a public or governmental capacity and therefore its manager exercise no part of the sovereign power of the state.

As it is now constituted, the Hail Insurance Department was established by the Sixteenth Legislative Assembly, chapter 160, Laws of N. D. 1919. Its purpose was to furnish "indemnity against damage to all growing agricultural crops by hail." In

accordance with the authorization of Article 24 of Amendments to the Constitution of North Dakota, a flat tax of three cents per annum upon every acre of tillable land in the state, and an indemnity tax upon all lands upon which insured crops were grown were imposed for "the total payment of all loss caused by hail to crops insured by the Department, plus the total cost of maintaining and operating said Department." Chapter 160, §§ 6 and 7, supra. In 1921, the legislature created a permanent surplus in the Hail Insurance Department, continued the levy of the flat tax of three cents an acre for the years 1921, 1922, 1923, 1924 and 1925 and provided that the proceeds of this tax should be used to establish the permanent surplus. Laws of N. D. 1921, c 77. In 1923, the flat tax was reduced to one cent an acre and it was provided that the permanent surplus should be fixed at a sum not less than four million nor more than five million dollars. Laws of N. D. 1923, c 232. It was contemplated that this surplus fund should be used as a revolving fund for the purpose of paying hail losses promptly and that it should be reimbursed by the proceeds of the indemnity tax which was to be thereafter levied in an amount equal to the losses but which could not be calculated until all the losses for a particular year had been established. We had occasion to consider the nature of this surplus fund and the flat tax which was levied to create it in State ex rel. Sathre v. Hopton, 66 ND 313, 265 NW 395. In that case we said (p 323)

"It (the flat tax) was an enforced or compulsory contribution levied by the state in its sovereign character."

The fund so raised is held by the state in its sovereign capacity.

Under the provisions of § 26–2202 above quoted, the manager of the State Hail Insurance Department "shall be in direct charge thereof." It is his duty therefore to protect this fund, to supervise and direct the payments to be made therefrom and to provide for its reimbursement. In performing these duties he is clearly exercising a portion of the sovereign power for the benefit of the public and he is therefore a public officer. Other

considerations occur to us, such as the direct analogy between the principles involved in the State Hail Insurance Act and in Workmen's Compensation Acts which are universally held to be proper exercise of the police power of the state. We do not, however, consider that a further discussion of the point is necessary.

Next, we turn to respondent's assertion that the provision of § 26–2202, supra, which requires that the Governor shall approve the appointment of the Manager of the State Hail Insurance Department, is unconstitutional. Two grounds of unconstitutionality are urged. We shall set them forth as they are contained in the memorandum filed with his return. They are as follows: "Section 83 (of the constitution) provides: the powers and duties of the . . . Commissioner of Insurance . . . shall be prescribed by law. The power thus delegated to the Legislature to prescribe the duties of the Commissioner of Insurance does not justify the whole or partial delegation of any of such duties to some other office or officer . . ." and "if the statute, § 26–2202, uses the word 'approval' to be synonymous with confirmation, then it may be challenged as an attempt to confer upon the governor a power which is not executive in character."

In arguing the first proposition counsel for respondent referred to the principle announced in Ex parte Corliss, 16 ND 470, 114 NW 962, to wit: that offices which "are embedded in the Constitution . . . cannot be stripped of the important duties inherently connected therewith." In this connection it is sufficient to say that the office of Commissioner of Insurance is not one of the offices which for years prior to the adoption of our Constitution had been associated with certain traditional powers and duties and that there are no duties which are inherently connected with that office. The legislature was therefore not under any implied constitutional compulsion to place the Hail Insurance Department under the jurisdiction of the Commissioner of Insurance, nor when the legislature decided to place the department under his control was there any implied

constitutional limitation which would prevent it from requiring him to share the power of appointment of the department's manager with another constitutional officer. If the legislature had the power to deprive the Commissioner of Insurance of all control of the department, it had the power to deprive him of a part of that control.

Respondent's contention that § 26–2202, supra, confers upon the governor powers which are not executive in character also is without merit. The power to appoint to an office is intrinsically but not exclusively an executive function. 16 CJS 510. An apportionment of that power between two executive officers cannot change the nature of the power. It remains intrinsically an executive power.

We thus reach the main question in this proceeding. Has the respondent legal title to the office of Manager of the Hail Insurance Department? The Attorney-General contends that respondent has never had a valid appointment to that office and that his tenure in office has been no more than a de facto tenure from its very beginning. He contends further, that, if respondent's original appointment was valid, it expired by its own limitation on January 1, 1941, that his holding over thereafter was de facto in character and that he was therefore subject to removal at any time by concurrent action of the appointing power, to wit the Commissioner of Insurance and the Governor. On the other hand, respondent asserts, that since the statute which created the office did not expressly fix a term of office, the implied term is at the will of the appointing power. He maintains that his original appointment was valid, that thereafter he continued to serve as a de jure officer and that he has not been removed by persons, empowered by law with the right of removal. We see no necessity for deciding the exact nature of respondent's tenure. Whether he was a de facto or de jure officer serving after his term of office had expired or a de jure officer serving at will, it is clear that at the time of his alleged removal he was not holding office for a fixed term, and, in the absence of any statutory or constitutional provision to the contrary, was

subject to removal without cause and without notice, by order of the appointing power. State ex rel. Moore v. Archibald, 5 ND 359, 66 NW 234; annotation in 99 ALR 381.

As has been stated the power to appoint the Manager of the Hail Insurance Department was vested in the Commissioner of Insurance with the approval of the Governor. Section 26–2202, supra. At the time of respondent's removal from office the duly elected Commissioner of Insurance had been impeached. As a result he was disqualified from performing any of the duties of that office. Constitution of ND § 198, § 44–0908 Rev Code 1943. And pursuant to the provisions of § 44–0908 Rev Code 1943, the Governor had designated Hon. S. A. Olsness to perform the duties of the office until the end of the trial upon the articles of impeachment. Section 44–0908 is as follows:

"No officer shall exercise the duties of his office after he shall have been impeached and before his acquittal. Whenever upon the impeachment of an officer there is no one authorized by law to perform the duties of the office and the senate shall by resolution declare that the public service may suffer by reason thereof, the governor shall designate some suitable person to perform the duties of the office until the end of the trial upon the articles of impeachment. The person so designated shall receive the same salary, fees, and emoluments as such officer would receive if not impeached. If the accused is acquitted, he shall be restored immediately to the office but if he is convicted, the office shall be deemed vacant and shall be filled immediately as provided by law."

On February 28, 1945, respondent was summarily removed from office by the concurrent acts of the Governor and Mr. Olsness. It follows from what we have said that the question of the validity of respondent's removal turns upon the extent to which designation to perform the duties of the office conferred the powers of the Commissioner of Insurance upon Mr. Olsness. If, as respondent contends, Mr. Olsness was burdened with the duties of carrying on with the administrative details of the office, but was granted none of its powers, the removal is invalid.

On the other hand if such designation vested him with the powers of the office, respondent's removal was valid. Upon the question of power, we have no doubt. It is inconceivable that a legislative requirement to perform the duties of an office should not carry with it by implication a grant of power to perform those duties. Under the statute the requirement of performing the duties of the office is plenary. Likewise must be the implied grant of power. The fact that the elected Commissioner of Insurance held a naked legal title to the office at the time of respondent's removal in no way alters the situation. He was stripped of all the powers of the office. State ex rel. Trapp v. Chambers, 96 Okla 78, 220 P 890, 30 ALR 1144; People ex rel. Robin v. Hayes, 163 App Div 725, 149 NYS 250, 212 NY 603, 106 NE 1041. And the person designated to perform the duties of the office was vested with all its powers. People ex rel. Happell v. Sischo, 23 Cal2d 478, 144 P2d 785, 150 ALR 1431; Daniel v. Citizens & S. Nat. Bank, 182 Ga 384, 185 SE 696; Gray v. Independence County, 166 Ark 502, 266 SW 465. It follows that respondent's removal from office was valid. He has not been reappointed. Petitioner is accordingly entitled to judgment ousting the respondent from the office of Manager of the Hail Insurance Department.

CHRISTIANSON, Ch. J., and NUESSLE and BURR, JJ., concur.

MORRIS, J. (dissenting) The facts set forth in the majority opinion clearly demonstrate that this was a controversy between the Governor and the late Commissioner of Insurance over the appointment of a Manager of the State Hail Insurance Department. We were asked to exercise the original jurisdiction conferred upon this Court by § 87 of the Constitution because the controversy involved the sovereignty of the State. The original jurisdiction of this Court "is reserved for the use of the state itself when it appears to be necessary to vindicate or protect its prerogatives or franchises or the liberties of its people." State ex rel. Conrad v. Langer, 68 ND 167, 277 NW 504. Since the case was submitted the Insurance Commissioner

692

has died. The Governor now possesses the power to appoint his successor. Rev Code 1943, § 44–0203. That successor has power to appoint a Manager of the State Hail Insurance Department with the approval of the Governor. Rev Code 1943, § 26–2202. The issues growing out of the apportionment of appointive power between the Governor and the Commissioner of Insurance are moot. For all practical purposes the controversy which brought the matter to this Court is at an end and no longer calls for the exercise of our original jurisdiction. The case should, therefore, be dismissed.