Dwyer, Appellant, *v.* Dilworth.

Argued January 15, 1958. Before Jones, C. J., Bell, Chidsey, Musmanno, Jones and Cohen, JJ.

*Samuel C. Tabbey,* with him *Irving R. Shull* and *Bernard L. Lemisch,* for appellant.

*David Berger,* City Solicitor, with him *Frank X. O'Brien, James L. J. Pié,* Assistant City Solicitors, and *Jacob J. Siegal,* Assistant to the City Solicitor, for appellees.

Opinion by Mr. Justice Cohen, March 17, 1958:

In *Lennox v. Clark,* 372 Pa. 355, 93 A. 2d 834 (1953) we held that the Office of the Clerk of the Courts of Oyer and Terminer and Quarter Sessions of the Peace of Philadelphia County became a city office under the

City-County Consolidation Amendment,[1] and subject to the civil service provisions of the Home Rule Charter. In making this determination we reasoned that the Constitution established the clerk of quarter sessions as a county officer,[2] and since control of this office was not assigned to the judiciary by virtue of Article V of the Constitution,[3] no conflict between the city and the courts over the conduct of this office could arise, and therefore no unconstitutional encroachment by the executive branch of the government upon the power of the judiciary could occur by the placing of the office of the clerk under the city's jurisdiction.

After this decision the personnel director of Philadelphia, in cooperation with the clerk of quarter sessions, made a study of the functions and duties of the positions in the office of the clerk and classified the positions in accordance with the civil service system. Based upon this study a qualifying examination was prepared for employes appointed to their posts prior to the effective date of the charter to ascertain whether such employes were competent to retain their jobs.[4]

---

[1] Constitution of Pennsylvania, Art. XIV, §8 (adopted November 6, 1951).

[2] Constitution of Pennsylvania, Art. XIV, §1.

[3] The exceptional treatment given to the Prothonotary of Philadelphia in Art. V, §7 apparently stemmed from the fear that the great amount of fees collected by that office would constitute a temptation to corruption which could be minimized by subjecting the prothonotary to court appointment. See Debates of the Constitutional Convention of Pennsylvania, Vol. 4, 182-187, 192-216 (1873).

[4] The annotation to §A-104 of the Charter declares: "(b) . . . The examination required is not intended to be a competitive test nor need it be a written one. Its sole purpose is to establish that a former non-civil service employee or employee not appointed pursuant to test and certification meets certain minimum qualifications necessary to perform the duties of the position which he holds. Experience and a previous record of satisfactory performance are factors to be considered in the test rating. It is not the intention

For employes appointed thereafter an open competitive examination was provided pursuant to civil service regulations.[5]

Two days before the scheduled date of the examinations, June 30, 1956, the plaintiff a taxpayer of Philadelphia, instituted suit to restrain the city from administering the examinations. A preliminary injunction was granted, the city answered and on the basis of the pleadings the injunction was dissolved and a decree entered in favor of the defendants. This appeal with a supersedeas followed.

In effect plaintiff seeks to have us reconsider that portion of our opinion in the *Lennox* case in which we dealt with the office of clerk of quarter sessions. The gist of plaintiff's contentions is that the office of the clerk performs the ministerial function of court administration precisely as does the office of the prothonotary which we held to be under the exclusive jurisdiction of the judiciary, and that to subject the employees of the clerk's office to municipal civil service would somehow

of this section to take off the City payroll employees who have faithfully and creditably performed their duties of employment prior to the effective date of this Charter merely because they were not civil service employees pursuant to test and certification under the 1919 Charter. The presumption should be that such employees are qualified to continue their employment but as civil service employees. To protect the interest in the respects noted of such employees, it is required that the Civil Service Commission itself in this instance shall approve the qualifying test prescribed by the Personnel Director."

[5] This procedure is the one recommended by the commentators, and adopted by several civil service jurisdictions. *E.g.*, Illinois, Kansas, Louisiana and Michigan. In several other states incumbent employes with less than specified periods of service are required to pass qualifying examinations: Florida (1 year); Maryland (6 months); Minnesota (5 years); Oregon (5 years). See also National Civil Service League—National Municipal League, Model State Civil Service Law §11. (1953) (1 year).

threaten the principles of separation of powers, the independence of the judiciary and unconstitutionally permit executive encroachment upon the powers of the courts. See *De Chastellux v. Fairchild*, 15 Pa. 18, 20 (1850).

We need not dwell upon plaintiff's strained and tenuous argument;[6] plaintiff, even if correct, is not the proper party to raise this constitutional question. As we said in *Knowles's Estate*, 295 Pa. 571, 580-582, 145 Atl. 797 (1929): "[it is fundamental that] . . . a court will not heed objections to the constitutionality of an act unless the complainant is harmed by the particular feature alleged to be in conflict with the Constitution.

"The above principle is but one of the many variations of the general rule that 'a court [will not] listen to an objection made to the constitutionality of an act by a party whose rights it does not affect; . . . for only persons materially affected are entitled to raise constitutional questions . . .

"The rule that one not injured by a statute cannot object to it as invalid was early applied in Pennsylvania in the case of *Smith v. McCarthy*, 56 Pa. 359, 362-3, where this court said, inter alia: 'Even supposing the

---

[6] See *Leahey v. Farrell*, 362 Pa. 52, 66 A. 2d 577 (1949) (legislation regulating appointment and salaries of official court stenographers held not to be an unconstitutional encroachment upon the powers of the judiciary.)

See also *People v. Brady*, 275 Ill. 261, 114 N.E. 25, 26-27 (1916). (A clerk of a court although an officer of the court who has charge of the clerical part of its business does not exercise judicial powers and his appointment and removal may constitutionally be made subject to executive action); *Sabbe v. Wayne County*, 322 Mich. 501, 33 N.W. 2nd 921, 922-923 (1948) (A deputy circuit clerk although subject to the legitimate orders of the court has ministerial not judicial functions and is not exempt from civil service).

act to be, as alleged, unconstitutional, private parties cannot interfere by bill to ask it to be so declared, unless on account of some special damage or injury to them in person or property.' "[7]

Thus, the fact that a plaintiff pays tax monies to the city treasury does not establish her standing to maintain this suit unless she can also demonstrate that her pecuniary interest in the proper use of such funds would be jeopardized by the act she seeks to restrain.

Plaintiff attempts to comply with this requirement by alleging a threatened waste of public funds. She hypothesizes that the proposed examinations might well result in the supplanting of the present experienced and trained personnel by new clerks, thus obligating the city to train new employes and forfeit its investment in the old.

We fail to understand how the weeding out of incompetent incumbent employes and the selection of the best qualified, most able candidates for the public service in any sense involves a waste or misuse of public monies. On the contrary, the retention of those incompetent clerks who have not benefited from their training and experience certainly is undesirable from the standpoint of service and economy.

Since we find no ground upon which the plaintiff's suit can be maintained, the court below did not err in entering a decree for the defendants and dismissing the action.

Decree affirmed.

---

[7] See also *Doremus v. Board of Education*, 342 U.S. 429 (1952) (taxpayers' suit challenging the constitutionality of state statute providing for bible reading in public schools did not present "case or controversy") ; *Hammond v. Lancaster*, 194 Md. 462, 71 A. 2d 474 (1950) (taxpayer has no standing to raise constitutionality of statute requiring loyalty oaths from public employees).