Daly *v.* Hemphill, Appellant.
Reese *v.* Hemphill, Appellant.

264

Argued April 18, 1963. Before BELL, C.J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

 reargu-
ment refused July 1, 1963.

*Edward G. Bauer, Jr.,* City Solicitor, with him
*Herbert B. Newberg* and *Ellis A. Horwitz,* Assistant
City Solicitors, and *Levy Anderson,* First Deputy City
Solicitor, for appellants.

*Herbert S. Levin,* for appellant, intervening defend-
ant.

*Edward R. Becker,* with him *Edwin E. Naythons,*
*Stanley M. Greenberg* and *William A. Meehan,* for ap-
pellees.

OPINION BY MR. JUSTICE ROBERTS, June 4, 1963:

Appellee, John F. Daly, was appointed Chief Magis-
trate of the City of Philadelphia by the Governor on

February 11, 1963.[1] Shortly thereafter, Chief Magistrate Daly removed thirteen employees who had served the magistrates' courts in various capacities.[2] In addition, he appointed appellee Reese as a bailiff in the divisional police court and appellee Dougherty as a writ server in Traffic Court. The Chief Magistrate notified appellants, the city's auditing and disbursing officers, of the dismissals and appointments, and requested that only payroll vouchers verified and signed by him be approved for payment. Appellants refused to comply with this request.

For at least twenty-five years prior to this proceeding (and perhaps for ten years longer), there had been no challenge to the authority of a Chief Magistrate to appoint and dismiss employees such as are here involved. In 1937, the Board of Magistrates directed by rule that: "The Chief Magistrate shall appoint all persons necessary and as are provided for by law." On January 11, 1963, however, by resolution, the Board of Magistrates, for the first time, created a personnel committee to assume the power of appointment and discharge of employees and provided specifically: "No certification of the payroll shall be effective without the joinder of the Chief Clerk, the Chief Magistrate and the Secretary of the Board of Magistrates; provided, however, that if the Chief Clerk or the Chief Magistrate or both of them shall be unable or unwilling to approve . . . without such cause as shall appear to a majority of the members of the Board of Magistrates in their sole discretion to be good cause then and in that event, the Secretary [apparently selected by a majority of the Board] shall approve the payroll and his signature alone shall be sufficient . . . ." On

---

[1] This appointment was made pursuant to Magistrates' Court Act of 1937, P.L. 1743, No. 368, §32, 42 P.S. §1133 (Supp. 1962).

[2] The employees included a janitor, clerk-typist, bailiff, writ server, auditor, litter clerk, receptionist and record clerk.

the basis of this resolution, appellants refused to accede to Chief Magistrate Daly's request.

A complaint in equity was filed by appellee Daly to enjoin appellants from interfering with the performance of his duties as Chief Magistrate. Simultaneously, the two employees appointed by him instituted actions in mandamus against appellants. Subsequently, the thirteen dismissed employees were granted permission to intervene. These actions were consolidated below and will be considered here as one appeal. The City filed preliminary objections in the nature of a demurrer. Counsel agreed that since only questions of law were involved, the disposition of these objections would be a final appealable order and that the filing of exceptions would be waived. The court below dismissed the preliminary objections, enjoined appellants from interfering with the actions of the Chief Magistrate, and ordered them to pay the salaries of appellees Reese and Dougherty.

Prior to determining whether or not there is authority in the Chief Magistrate to appoint and remove employees, it is necessary to resolve a contention raised by appellant-intervenor Black (one of the dismissed employees) that Section 32 of the Magistrates' Court Act of 1937,[3] which provides that ". . . the Governor shall select from among the [elected] magistrates a chief magistrate . . .,"[4] is an unconstitutional infringe-

---

[3] Note 1 supra.

[4] Prior to the 1937 Act, the Chief Magistrate was elected by the magistrates from among their number. Magistrates' Court Act of 1927, §25, 42 P.S. §1065 (1930). However, the Legislature in 1937 placed the selection of Chief Magistrate in the Governor as part of its effort to correct evils disclosed by a grand jury investigation of the system and the *Report to the Governor and General Assembly by the Commission Appointed at the Recommendation of the Special Grand Jury of 1935 to Study and Recommend Improvements in the Laws Relating to Magistrates and Magistrates' Courts in the City of Philadelphia.* Appendix to Legislative Journal 1937, Vol. 21, Part 7, pp. 7611-17.

ment upon the judicial power vested in the magistrates' courts[5] in violation of the principle of separation of powers, and that the Governor, therefore, is without authority to appoint or remove a Chief Magistrate. As basic support, appellant-intervenor relies upon *Humphrey's Executor v. United States,* 295 U.S. 602 (1935), in which the Supreme Court of the United States held that the President lacked the power to remove a member of the Federal Trade Commission, a quasi-judicial body, who had been appointed by the preceding President. The authority of that decision on the separation of powers is unquestioned. Pennsylvania has long adhered to the doctrine of separation of powers. An encroachment upon the judicial power by the legislature, or such encroachment by legislative delegation of power to the executive, would be a violation of that principle. See, e.g., *Commonwealth v. Knox,* 172 Pa. Superior Ct. 510, 94 A. 2d 128 (1953), aff'd per curiam, 374 Pa. 343, 97 A. 2d 782 (1953). However, no such encroachment upon judicial power has been shown here to exist.

Should the Governor choose to remove a Chief Magistrate, the latter no longer serves in the capacity of *Chief* Magistrate, but he does retain his judicial position undisturbed until the expiration of his elected term. In *Humphrey,* however, had the dismissal been effective, the commissioner would have been removed from the FTC prior to the completition of his statutory term of office. Further, the duties of the Chief Magistrate, beyond those performed as magistrate, are purely administrative and executive responsibilities dealing with the non-judicial functions of the magistrates' courts, and are not part of the judicial power. The assignment of magistrates to Traffic Court[6] and to divisional police courts[7] must be in accordance with a ro-

---

[5] Pa. Const., Art. V, §1.

[6] Act of 1937, §10.1, 42 P.S. §1110.1.

[7] Act of 1937, §11, 42 P.S. §1111.

tation system merely administered by the Chief Magistrate. Likewise, provision by him for appointment of stenographers[8] and the appointment of the chief clerk and deputy stenographic clerk[9] are no more within the judicial power than the fixing of compensation of court employees upheld in *Leahey v. Farrell*, 362 Pa. 52, 66 A. 2d 577 (1949), or the legislative direction placing the clerk of the court of quarter sessions under jurisdiction of the city in *Lennox v. Clark*, 372 Pa. 355, 93 A. 2d 834 (1953), or the subsequent placing of employees of the clerk of quarter sessions under municipal civil service in *Dwyer v. Dilworth*, 392 Pa. 123, 139 A. 2d 653 (1958). He serves as *administrative* representative and *executive* head of the Board of Magistrates and *executes* the rules and regulations which the Board is empowered or authorized to adopt.[10] Similarly, analysis of all other functions of the Chief Magistrate, apart from his judicial duties as a magistrate, leads to the same conclusion. There is no violation of the separation of powers or encroachment upon judicial independence in the appointment of a Chief Magistrate by the Governor. The grant of this authority to the Governor is well within the law-making sphere of the Legislature.[10a]

It is also contended that it is unconstitutional for the Legislature to confer *any* appointive powers upon the Chief Magistrate. In *Lennox v. Clark,* supra, strongly relied upon to support this position, the office of Prothonotary of the Courts of Common Pleas of Philadelphia was held to be an integral part of the judicial power but only by virtue of specific constitutional provision.[11] The Board of Magistrates is not a

---

[8] Act of 1937, §36, 42 P.S. §1137.

[9] Act of 1937, §37, 42 P.S. §1138.

[10] Act of 1937, §31, 42 P.S. §1132.

[10a] See note 4 supra.

[11] Pa. Const., Art. V, §7.

constitutional entity nor is it in any sense a court or judicial forum. The Board, as such, is not invested with judicial power nor does it render judicial determinations. Rather, it is a creation of the Legislature composed of twenty-eight magistrates organized into a board for administrative purposes only. The employees here involved, just as in *Dwyer v. Dilworth,* supra, and *Leahey v. Farrell,* supra, are subject to reasonable legislative control and may be placed under the authority and supervision of a Chief Magistrate.

In seeking to attribute to the Magistrates' Court Act constitutional infirmity on the ground of legislative and executive interference with judicial independence, appellant-intervenor misapplies the mandate of separation of powers to the delegation and performance of executive and administrative duties which are not part of the judicial process of magistrates' courts. Such delegation neither restrains nor interferes with judicial power. The power of appointment is intrinsically and historically an executive function. See, e.g., *Municipality of St. Thomas & St. John v. Gordon,* 78 F. Supp. 440 (D. V. I. 1948); *Tucker v. State,* 218 Ind. 614, 35 N.E. 2d 270 (1941); *Taylor v. Commonwealth,* 26 Ky. 401, 3 J. J. Marshall (1830); *In re Opinion of the Justices,* 303 Mass. 615, 21 N.E. 2d 551 (1939); *State ex rel. Johnson v. Myers,* 74 N.D. 678, 19 N.W. 2d 745 (1945).

In this and in other cases in which a statute has been constitutionally attacked, all our courts have been governed by the rule that "we can declare an Act of Assembly void, only when it violates the Constitution *clearly, palpably, plainly;* and in such manner as to leave *no doubt* or hesitation on our minds." *Sharpless v. Mayor of Philadelphia,* 21 Pa. 147, 164 (1853). (Emphasis in the original.) This rule has been variously stated. In several cases this Court has adopted the rule laid down in the *Sharpless* case, supra. This lan-

guage was repeated in *Tranter v. Allegheny County Authority,* 316 Pa. 65, 75, 173 Atl. 289 (1934); *Kelley v. Baldwin,* 319 Pa. 53, 54, 179 Atl. 736 (1935); *Lighton v. Abington Township,* 336 Pa. 345, 366, 9 A. 2d 605 (1939); *Sablosky v. Messner,* 372 Pa. 47, 59, 92 A. 2d 411 (1952); *Land Holding Corp. v. Board of Finance and Revenue,* 388 Pa. 61, 72, 130 A. 2d 700 (1957); *Rubin v. Bailey,* 398 Pa. 271, 276, 157 A. 2d 822 (1960).

In other cases the Court has stated the test to be "clearly and plainly" or "clearly and palpably," *Allentown School District Mercantile Tax Case,* 370 Pa. 161, 166, 87 A. 2d 480 (1952); *Clark v. Meade,* 377 Pa. 150, 171, 104 A. 2d 465 (1954); *Cali v. Philadelphia,* 406 Pa. 290, 296, 177 A. 2d 824 (1962); *Bargain City U.S.A., Inc. v. Dilworth,* 407 Pa. 129, 137, 179 A. 2d 439 (1962); or merely "clear", *Loomis v. Phila. School District Board of Education,* 376 Pa. 428, 431, 103 A. 2d 769 (1954). Moreover, in other cases we have expressed the test to be "clearly, palpably and plainly" or "clear, palpable and plain." *Mikell v. Phila. School District,* 359 Pa. 113, 117, 58 A. 2d 339 (1948); *Loushay Appeal,* 370 Pa. 453, 456, 88 A. 2d 793 (1952); *Evans v. West Norriton Twp. Municipal Authority,* 370 Pa. 150, 158, 87 A. 2d 474 (1952).

While each test is substantially the same, we are convinced that a uniform test should now and hereafter be used and that this test can most soundly and wisely be stated thus: "An Act of Assembly will not be declared unconstitutional unless it *clearly, palpably* and *plainly* violates the Constitution."

The constitutional challenges levied by appellant-intervenor do not satisfy this test and must fail.

Appellants argue that the Board of Magistrates, rather than the Chief Magistrate, is vested with the power to appoint and dismiss the employees in question. The Magistrates' Court Act of 1927[12] first estab-

---

[12] May 10, P. L. 866, 42 P.S. §§1041-1080 (1930).

lished the Board and empowered it to make rules and regulations and to investigate and take proper action upon complaints pertaining to the magistrates' courts, their officers and employees.[13]   Each magistrate was authorized to appoint his own clerk[14] and constable.[15] The Act further provided, inter alia, that the Board elect a chief city magistrate who ". . . shall be the *administrative head* of, and have general supervision of, the business of all of the courts held by magistrates . . .,"[16] and who shall appoint a chief clerk and deputy stenographic clerk.[17]   No other employees were authorized by that Act.[18]

Major portions of the 1927 Act were replaced by the Magistrates' Court Act of 1937.[19]   In Section 31 of the Act of 1937, the pertinent parts of which are set forth in the margin,[20] the Board of Magistrates is authorized

---

[13] Act of 1927, §26, 42 P.S. §1066.

[14] Act of 1927, §28, 42 P.S. §1068.

[15] Act of 1927, §22, 42 P.S. §1062.

[16] Act of 1927, §25, 42 P.S. §1065.   (Emphasis supplied.)

[17] Act of 1927, §29, 42 P.S. §1069.

[18] Appellees state in their brief that the records of the Board of Magistrates reveal that between 1927 and 1937, the only additional employee was a janitor for the Chief Magistrate's office hired by him in 1930.

[19] June 15, P. L. 1743, No. 368, as amended, 42 P.S. §§1101-1147 (Supp. 1962).

[20] "Board of Magistrates; powers and duties; minutes of meeting. There shall be a board of magistrates composed of all the magistrates of the city of Philadelphia. The said board shall be presided over by a chief magistrate who shall be the administrative representative and executive head of the said board, and shall be selected in the manner, and shall hold the position of chief magistrate for the term, hereinafter provided. The chief magistrate shall have general supervision of the conduct of the business of all the courts held by the magistrates, including traffic courts, and, between meetings of the board of magistrates, shall have full power and authority to execute the rules and regulations of the said board, and to issue such necessary interim administrative or-

to make rules and regulations, to investigate matters pertaining to the magistrates' courts, the administration thereof, and the *official conduct* of persons connected with those courts, and to take such action as deemed necessary following investigation. Nowhere, either in this section or elsewhere in the Act, is the Board expressly or impliedly given the right or authority to appoint or discharge any employee.

Section 31 of the Act of 1937 also designates the Chief Magistrate as "administrative representative and *executive* head" of the Board, whereas in the earlier Act he was merely "administrative head". Surely, the change in language and the addition of "representative and executive" has substantive meaning and goes beyond mere style. These words may not be ignored. They impose additional executive responsibilities upon the Chief Magistrate. To hold otherwise would be to disregard the language and intention of the Legislature, and this may not be done. The Legislature cannot be deemed to intend that its language be superfluous and without import. *Commonwealth v. Mack Bros. Motor Car Co.*, 359 Pa. 636, 59 A. 2d 923 (1948). Every word, sentence or provision in a statute must be given effect in construction of the statute. *Commonwealth*

---

ders and directions as the said board could issue and as are not inconsistent with existing law or said rules and regulations. The said board of magistrates shall have the power, and it shall be its duty to consider, supervise, and prescribe rules and regulations for the conduct of the various civil and police courts by the magistrates, and the practice and procedure in the administration of justice therein. The said board shall have the power to investigate, of its own motion or on complaint of others, any and all matters pertaining to the courts presided over by the magistrates, the administration thereof, and the official conduct of any person or persons connected therewith, and take such lawful action in respect thereto as it may deem necessary and proper in the premises. . . ." 1937, June 15, P. L. 1743, No. 368, §31, as amended, Act of May 9, 1949, P. L. 1028, §9, 42 P.S. §1132 (Supp. 1962).

*v. McHugh,* 406 Pa. 566, 178 A. 2d 556 (1962). The word "executive" must be given its usual connotation. See Statutory Construction Act of May 28, 1937, P. L. 1019, §33, 46 P.S. §533 (1952).

". . . [I]n modern commercial use, an 'Executive' is a reasonably well understood term to designate one . . . who directs the work of others, has authority to hire and discharge, promote, or change the status of, such others . . . ." 33 C.J.S., Executive 847-48 (1942). Regulations promulgated pursuant to the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201 et seq., define "executive" as one "(c) who has the authority to hire or fire other employees . . . ." 29 C.F.R. §541.1 (1949). As previously observed, within the constitutional separation of governmental powers into executive, legislative and judicial, the power of appointment is intrinsically and historically an executive function.[20a] Thus, it is clear that the Legislature intended to vest and did vest the appointive power in the Chief Magistrate.[21] Only in this way can he effectively supervise personnel and thereby carry out his administrative and executive duties.

Section 36 of the Act of 1937[22] authorized him to "provide for the appointment of" stenographers or stenographic clerks. Appellants urge that this language does not grant the Chief Magistrate the author-

---

[20a] See cases cited in text at p. 271 supra.

[21] This construction is in harmony with the legislative purpose to correct known evils in the system, see note 4 supra, and the desire to establish an executive head selected by an authority other than the magistrates themselves. ". . . [I]n determining a statute's validity we must look to its purpose, its nature and its reasonable effect; we are not limited to the mere letter of the law but must look beyond the letter to determine its true purpose and effect." *Commonwealth of Pennsylvania Water and Power Resources Board v. Green Spring Co.,* 394 Pa. 1, 6. 145 A. 2d 178, 181 (1958).

[22] 42 P.S. §1137.

ity to appoint or remove stenographers. The argument is effectively rebutted by the very language of Section 38[23] which directs the city council to pay the salaries of stenographers "when appointed by the chief magistrate as aforesaid. . . ."

Appellants also argue that the Chief Magistrate is without authority to appoint or remove employees of the Philadelphia Traffic Court. At the establishment of the Traffic Court in 1957,[24] the Legislature was fully aware that for over twenty years all employees of the classes here involved were appointed and dismissed by the Chief Magistrate. It is significant that the Legislature made no other provision for the appointment of personnel required in that court. Had the Legislature intended otherwise, it would have so indicated. Therefore, it is apparent that, contrary to the assertions of appellants, the Chief Magistrate has the power to appoint and replace employees of the Traffic Court.

Finally, appellants contend that the Board possesses the inherent power of courts and that from such power the Board derives authority to appoint or discharge employees of the magistrates' courts. However, as previously observed,[25] the Board is not a judicial tribunal and lacks the inherent powers of courts. In addition, this contention presupposes that no provision has been made in the Magistrates' Court Act for such appointments. The concept of inherent power carries with it the implication that its use is for situations not covered by legislation. See *Leahey v. Farrell,* supra, 362 Pa. 52, 66 A. 2d 577 (1949). Having determined that the Legislature has made provision for such appointments, we must conclude that there can be no reliance on inherent power in this instance.

---

[23] 42 P.S. §1139.

[24] Act of 1957, P. L. 315, 42 P.S. §§1110.1-1110.5 (Supp. 1962).

[25] See text following note 11 supra.

We are satisfied that the power of appointment and removal of employees (save those specifically appointable by the individual magistrates) is statutorily vested in the Chief Magistrate. Therefore, the rules of the Board of Magistrates by which he was granted (in 1937) and relieved (January 11, 1963) of that power were superfluous and are of no effect. It follows that the decrees below were properly entered and must be affirmed.

Decrees affirmed. Costs to be paid by appellants.

Mr. Justice MUSMANNO dissents.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

Article V, §1 of the Pennsylvania Constitution provides: "1. Judicial power. The judicial power of this Commonwealth shall be vested in a Supreme Court, in courts of common pleas, courts of oyer and terminer and general jail delivery, courts of quarter sessions of the peace, orphans' courts, magistrates' courts, and in such other courts as the General Assembly may from time to time establish." Thus the magistrates' courts are designated as courts in which the judicial power of this Commonwealth is vested.

Article V, §12 of the Pennsylvania Constitution further contains constitutional directives pertaining to the magistrates' courts in Philadelphia, and further emphasizes the constitutional scheme of including the magistrates' courts in the judicial system. *McNair's Petition,* 324 Pa. 48, 187 Atl. 498 (1936), reaffirms the recognition in this Commonwealth of the office of magistrate as a judicial office.

The corrupt and maladministration of the offices of magistrate which existed prior to 1937 and the investigations which disclosed the improper activities on

the part of certain magistrates undoubtedly lead to the enactment of the Magistrates' Court Act of 1937 providing for the appointment of a chief magistrate by the governor. This violation of the independence of the judiciary, both from the executive and legislative, was unquestioned—not because of its acknowledged constitutionality but rather—because the atmosphere of the time called for a revision of the laws pertaining to the functioning of the Magistrates' courts in Philadelphia.

The designation of a chief justice of our Court, the president judge of the various courts of common pleas, the president judge of the orphans' courts, presiding judge of the county courts, are all accomplished either in conformance with a mandate of the Constitution or by a procedure which leaves them free from the intrusion of either the executive or legislative branch of our government.

I would determine this litigation by striking down the appointment of the chief magistrate by the governor of our Commonwealth as an unconstitutional intrusion.

Directing my attention to the opinion of the majority, this appeal raises two questions: (1) whether the Magistrates' Court Act of 1937, as amended, confers the general power to appoint employees upon the board of magistrates or upon the chief magistrate; and (2) if the general power of appointment resides in the board of magistrates, whether the legislature in sections 36 and 38 of the Act has specifically granted to the chief magistrate the power to appoint stenographers and stenographic clerks. I would hold that the power of appointment resides in the board of magistrates except where, as in sections 36 and 38 of the Act, the legislature has specifically provided otherwise.

A reading of the Magistrates' Court Act of 1937 makes it clear that the board of magistrates and not the chief magistrate possesses general executive and rule-making powers. It is the board which has the

power to prescribe rules and regulations for the conduct of the magistrates' courts. It is the board which has the power "to investigate . . . any and all matters pertaining to the courts presided over by the magistrates, the administration thereof, *and the official conduct of any person or persons connected therewith,* and take such lawful action in respect thereto as it may deem necessary and proper in the premises." (Emphasis supplied).

. The majority relies on the denomination of the chief magistrate as the "administrative representative and executive head of said board." Its extended and strained discussion of the term "executive" ignores the important fact that the chief magistrate is only the *executive head of the board of magistrates*—similar to the executive head of a corporate board of directors—and *not* the executive head of the whole magistrates' system. As executive head of the board, his powers, except where otherwise specifically provided in the Act, are those conferred upon him by the board of magistrates. In this connection, it is quite significant that the legislature has specifically granted to the chief magistrate the power to appoint a chief clerk and a deputy stenographic clerk. If, as the majority contends, the chief magistrate had general power to make appointments, these specific grants of power would be totally unnecessary.

The majority also makes the argument that the legislature, aware of the prior practice under the Magistrates' Court Act of 1937, incorporated this practice sub silentio into the Traffic Court Act of 1957. Without commenting on the validity of this type of argument, I would merely point out that the prior practice whereby the chief magistrate made appointments was based not upon an assertion by the chief magistrate of such power under the 1937 Act, but rather was based on a delegation of power to him from the board of

magistrates through its rule-making powers, which is frankly admitted by the majority. Hence this argument of incorporation cuts against the result reached by the majority.

Of course, the legislature in the Magistrates' Court Act has specifically granted certain powers to the chief magistrate as well as to the individual magistrates. I agree with the majority's interpretation of sections 36 and 38 of the Act (if constitutional) as giving the chief magistrate power to appoint stenographers and stenographic clerks.

Accordingly, I dissent.