Judge Hitchcock
delivered the opinion of the court:
The first question which presents itself to the court for consideration is, whether Samuel H. Goodin, the relator, has a right to the office 'which he now demands. In order to settle this question, we are disposed to disregard any technical objections, and to consider all the facts as they are presented to us by the papers submitted. Those facts are substantially as follows : On Saturday, April 12, 1834, the court of common pleas for the county of Hamilton, being then in session', and the office of clerk being vacant, a written paper was handed to Goodin, signed by three of the judges, in form following: “ We agree to the appointment of ' Samuel H. Goodin to the office of clerk of the court of common pleas of Hamilton county.” At the same time the form of a journal entry was handed to the clerk pro tern, with directions to have the *same entered on the minute book, in the follow *143 ing words : “ It is ordered that Samuel H. Goodin be, and he is hereby appointed clerk of this court for the constitutional term of seven years.” And the court then adjourned until the next Monday morning. It does not appear that the certificate of appointed was presented to the fourth judge, and he denies that he was consulted on the subject.
On Monday morning it was discovered that the journal entry, for some cause, had not been made, and two of the judges refused to permit it to be .made, insisting that Goodin had not legally been appointed clerk, and protesting against his appointment; the other two judges at the same time insisting upon his appointment. In consequence of this opinion, the clerk refused to make the entry, and it has never been done.
On the 16th day of April, and before the final adjournment of the court, the relator appeared before the court, and produced a bond conditioned'as the law directs, for the faithful discharge of the duties, of clerk, which bond was signed by himself and a number of individuals, which bond was offered for the acceptance of the court. No objection was made to the sufficiency of the bond, but objections were made by two of the judges to its acceptance, and, of course, the court being equally divided in opinion, it was not accepted. At the same time the relator offered to take the oath of office, but owing to the same division of opinion, this also was refused.
On the 7th of May he went before a justice of the peace and took the oath of office, the court not then being in session.
At the August term of the court, and' on the 4th day of that month, the relator again came into court, and tendered the aforesaid bond, and mov ed the court to approve of the same ; he also tendered a certificate of his oath of office, and moved the court to admit him to enter upon the execution of the duties of the office of clerk. But the court being still divided in opinion as to his appointment, the motions were refused.
At the same August term., William H. Harrison was appointed clerk of the court for the term of seven years, was qualified as the law directs, and entered upon the execution of the duties of the office.
Do these, facts evince that the relator has been legally and constitutionally appointed; that he is, in truth, entitled to the ^office of clerk of the court of common pleas of Hamilton *144 county? If so, he is deprived of a right, and the law must furnish an adequate remedy..
Section 7, of article 3, of the constitution, provides that, “each court shall appoint its own clerk for the term of.seven years.” There is no other restriction, than this: that the court of common pleas shall not appoint any person to this trust for this term of time, unless he first produce a certificate signed by a majority of the judges of the Supreme Court, that they judge him well qualified to execute the duties of the office. This right being secured to the several courts, this court will rarely, if at all, interfere with its exercise. There may be cases where it would be proper to do it, but such cases must be extremely clear and free from doubt.
The mode of. appointment is not specified in express terms, either by the constitution or the law, but as it is an act of the court, we apprehend, like every other act, it must be done by an order. It is not sufficient for the judges to give to the applicant a certificate that they have agreed, or do agree to appoint him to that office. This, of itself, can be considered in no other light than as a pledge from the individuals signing the paper that he should be appointed. Neither would a certificate by the individual members of the court, that the applicant had been appointed, be an appointment; nor would it be legal evidence of an appointment, because it would be a personal act of individuals, not their act as a court.
It is true that, from necessity, this court does sometimes make pro tem. appointments, when not holding court in the county for which the appointment is made, but never to continue for a longer period than until the commencement of the next succeeding term. It is done to prevenía failure or delay of justice. The same necessity does not exist in the court of common pleas. In case a vacancy occurs in the office of clerk in that court, the law makes provision that.the associate judges who are residents of the county, and who may be easily convened, may appoint pro tem. 29 Ohio Stat. 58. But a permanent cferk can not be appointed, either by the Supreme Court or court of common pleas, except in open court, and also by an order of court. Such seems to have been the construction put upon the law by the court of common pleas in the case before us. For, notwithstanding a certificate of the agreement of three of the judges to appoint *him, was *145 given to the relator, yet the attempted appointment itself, was by order of court, as is manifest from the form of journal entry, handed to the clerk pro tem.
By section 94 of the practico act, 29 Stat. -75, it is provided, “that for preventing errors in entering the judgments, orders, and decrees of each court, the judges thereof, before every adjournment, shall cause the minutes of their proceedings to be publicly read by their clerk, and corrected when necessary, and the same shall be signed by the president judgé, then sitting in court; which minutes, so signed, shall be entered in a book and carefully preserved among the records; and no proceedings, orders, judgments, or decrees of either of the said courts shall be in force or valid, until the same be so recorded and signed.”
Under this section, the order of appointing a clerk as well as ev'wy other operative order of the court, must be entered upon the minute book, and until it is so entered, and the minute book signed by the presiding judge, it can not “be in force or valid;” in other words, the appointment is not complete. If this be a correct exposition of the law, Goodin was not, appointed clerk of the common pleas for the county of Hamilton. No order appointing him has ever been inserted in the minute book of the court. But it is said this is the very thing complained of. That the order was in fact made, and the object of the relator is to compel the court of common pleas to have it entered upon the minute book. This is claimed upon the hypothesis, that the fact of the appointment having been announced from the bench, it was so far made, that no change could afterward take place, neither could it be recalled. But is it so? Suppose a court should announce the name of an individual as appointed to the office of clerk, and immediately thereafter should discover that he was in no way qualified to discharge the duties; might not another appointment be made? Would it be improper for the court to direct that no entry upon the minute book should be made? Or suppose, that through mistake, the name of a wrong individual should be announced, might not the mistake be corrected ? The term of court is in law considered as one day, and during the termas a general rule every subject is open for reconsideration and correction. And this, to a certain extent, must be the case with respect to the appointment of clerk. After the announcement of the appointment, ^although the order making it is regularly entered, *146 still, before the individual can proceed to discharge official duties, he must take an oath of office, and also give bond, with security to be approved of by the court. After all this is done, it would be too late for the court to interfere with the office, unless for good cause shown. But, until this is done, the individual appointed, has no right to demand the office. Until it is done, if the court, making the appointment think proper, in the exercise of their discretion to rescind the order, and make another appointment, I am not prepared to say that thei’e would be sufficient ground to justify the interference of this court. On the contrary, it seems to me that the office is within the control of the court until the bond is approved. The cases of Marbury v. Madison, 1 Oranch, 137, and of Drew v. The Judges of the Sweet Spxdngs District, 3 Hen. & Munf. 1, have been cited as opposed to these principles.
In the case of Marbury v. Madison, the court decided that there must be some point of time' when the power of the appointing authority over the officer must cease, when the officer is not removable at will. That this must be when the power of appointment has been exercised. And the power has been exercised when the last act required from the person possessing the power has been performed. In that case the appointing power was in the president, and the-last act was the signature of the commission. If we apply these principles to the case now under consideration, they rather sustain than controvert the position before laid down. In this case the court of common pleas was the appointing power. By the order before referred to, had the same been regularly entered on the minute book, no authority was given to the relator to enter upon the duties of the office. He must take the oath of office; he must also give bond. And here another act is to be performed by the court- — the appointing power, and that is to approve of the bond. When this is done the appointment is complete, and not before. Had these things been done Goodin would have been clerk of the court, and would have.had the right to demand the office.
The case of Dew v. The Judges of the Sweet Springs District Court, in some of its general features, is like the ease under consideration. It requires, however, but a slight examination to see that that case turned upon the ^construction of certain Virginia statutes. What those statutes are we know not, except so far as can be gathered from the report of the case. Sufficient can be *147 collected from this to show that they are materially different from onr own, and, of course, the ease can not be considered as authority here.
'Upon the whole, we are of opinion that the relator has not established his right to the office of clerk. And such being the opinion of the court, it is unnecessary to inquire as to the power of this court to issue a writ of mandamus in a proper case made, or to examine the question whether it would be a proper mode of proceeding where the court of common pleas had wrongfully dispossessed a clerk of his office.
The rule is discharged.