LUCIUS DONOHUE, RESPONDENT, v. PALMER CAMPBELL, APPELLANT.

Submitted March 26, 1923—Decided June 18, 1923.

1. All pertinent evidence to support the theory upon which a case is tried and submitted to the jury is admissible, and the exclusion of such evidence is error entitling the defeated party to a reversal, even though the case was submitted to the jury upon a wrong principle.
2. This court in reviewing the judgment of the Supreme Court will not, as a general rule, consider any question not set up or argued in the court below; but it is constant practice here to notice and decide questions of jurisdiction and public policy without their having been raised in the court below.
3. Where some collateral matter which is absurd and manifestly repugnant to common reason arises out of the general words of a statute, the court is to conclude that this is a consequence which the legislature did not foresee, and as to it, to disregard the statute; and so, also, when a statutory power is exercised in a manner that could not have been within the contemplation of, and produces a result that could not have been foreseen by, the legislature, such exercise of power must be restrained within proper bounds by being held void in the circumstances and in the particular case before the court.
4. The non-judicial power given to the then single judge of the Hudson County Court of Common Pleas by the act to establish public parks in certain counties (*Pamph. L.* 1902. *p.* 811), to appoint park commissioners, was not intended by the act relating to the Court of Common Pleas (*Pamph. L.* 1918, *p.* 137), there being then three judges of that court, to confide to one or to

two of them, the right to appoint park commissioners by independent action, but only through concerted action of the three; and appointments made by two of such judges, on the one hand, and by one on the other, in attempted exercise of the power by the two and the one, respectively, independently of each other, are invalid, null and void.

On appeal from the Supreme Court.

For the appellant, *Wall, Haight, Carey & Hartpence.*

For the respondent, *Warren Dixon.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. This was an information in the nature of a *quo warranto* by Donohue, relator, against Campbell, respondent. The latter had for some time been a member of the Hudson county park commission, and his term expired at midnight on June 17th, 1922. On May 15th, 1922, Judges Blair. and McCarthy, of the Hudson County Court of Common Pleas, signed a paper which recited that by virtue of the power vested in them by chapter 277, laws of 1902, entitled "An act to establish public parks in certain counties of this state and to regulate the same," they, John A. Blair, Richard Doherty and James W. McCarthy, judges of the Court of Common Pleas, &c., did thereby appoint Palmer Campbell, of Hoboken, &c., a member of the board of commissioners known as the Hudson county park commission; that the said Campbell was thereby appointed to fill a vacancy caused by the expiration of his own term, and he was thereby appointed to serve as such member for a term of four years commencing June 18th, 1922, and this, as stated, was signed by Judges Blair and McCarthy. Thereupon this paper was sent to Judge Doherty, who, however, did not sign it, nor did he return it, but on May 23d, 1922, he signed a paper which recited that by virtue of the power vested in him by the act of 1902 above mentioned, he, Richard Doherty, judge of the Court of Common Pleas, &c., did thereby appoint Lucius F. Donohue, of Bayonne, &c., a member of the board

of commissioners, known as the Hudson county park commission; that the said Donohue was thereby appointed to fill a vacancy caused by the expiration of the term of Palmer Campbell; and he was thereby appointed to serve as such member for a term of four years, commencing June 18th, 1922, and this was signed by Judge Doherty.

On May 23d, 1922, the relator filed the certificate of his appointment with the county clerk, and the respondent filed a carbon copy of the certificate of his appointment, which copy had also been signed by Judges Blair and McCarthy; and the relator and respondent took oaths as such commissioner and filed the same with the county clerk. As to who first filed his certificate of appointment and oath, with the county clerk, and as to whether or not the oaths taken by either or both parties were sufficient in law, it is unnecessary for us to decide in view of the disposition presently to be made of this case.

The issue submitted to the jury was as to whose appointment was made first, whether that of the relator Donohue, or that of the respondent Campbell. A race for priority in filing the appointments in the county clerk's office could not settle the title to the office,—only a prior valid appointment would do that. Such an appointment should, of course, be filed at or before the time the term began. The verdict was in favor of the relator and against the respondent, and the relator had judgment of ouster against the respondent, who has appealed to this court, and filed two grounds of appeal, (1) that the trial court refused to admit in evidence the paper (appointing Mr. Campbell) signed by Judges Blair and McCarthy on May 15th, and (2) that the trial court refused to direct a verdict for the respondent.

Now, as above stated, the theory upon which the case was tried and the issue upon which it was submitted to the jury, was as to whose appointment was first made in point of time, that of the relator or that of the respondent, and upon that question the certificate signed by Judges Blair and McCarthy on May 15th, 1922, marked *Exhibit D-1* for identification, was pertinent evidence for the respondent on the question

submitted by the trial judge, but was excluded by him, and
that was error. A case is to be submitted on evidence which
would warrant a verdict on the theory on which it is tried.
See *Barnes* v. *Wallington & Co.*, *78 N. J. L.* 490, 492. And
this requires the admission of testimony pertinent to such
theory, such evidence being otherwise legal. A verdict can-
not be supported upon a theory of the law contrary to that
upon which the case was submitted to the jury. *Queen* v.
*Jennings*, 93 *Id.* 353. *Ergo*, all evidence pertinent to
that issue is admissible. This court in reviewing the judg-
ment of the Supreme Court will not, as a general rule, con-
sider any question not set up or argued in the court below.
See *Franklin* v. *Millville*, *ante* p. 262. But it is the
constant practice of appellate courts to notice and decide
questions of jurisdiction and public policy without those
questions having been raised below. See *McMichael* v. *Horay*,
90 *N. J. L.* 142.

While the exclusion of this exhibit alone is sufficient to
reverse the judgment in this case on the narrow question of
evidence, we have, nevertheless, chosen to put our decision
also upon the broad ground of public policy.

By chapter 277, laws of 1902 (*Pamph. L.*, *p.* 811), enti-
tled "An act to establish public parks in certain counties of
this state and to regulate the same," it is provided in sec-
tion 1 that in any county it shall be the duty of the judge
of the Court of Common Pleas sitting in said county to ap-
point four persons a board of park commissioners, to be
known as "the . . . . . . . . . county park commission;" and
at no time shall more than two commissioners under the act
be of the same political faith, &c. And by chapter 48, laws
of 1918 (p. 137), entitled "A supplement to an act entitled
'An act relating to the Court of Common Pleas (Revision of
1900),'" it is provided in section 2 that whenever there
shall be three judges of the Court of Common Pleas in any
county, said judges sitting together, or either of them sitting
alone, or each of them sitting separately at the same time,
shall constitute and may hold the Court of Common Pleas,
the Orphans' Court, the Court of Quarter Sessions and the

Court of Special Sessions; and said judges when sitting together, or alone, or separately at the same time, shall have and possess the same powers, authority and jurisdiction as are now vested in the existing judges of said courts; * * * whenever the said judges shall sit together the senior judge in service shall be the president judge of said court; and any power or authority now conferred by statute on the judge or judges of the Court of Common Pleas in any proceeding or matter may be exercised by either of said judges. And by section 3 that all existing statutes relating to the Court of Common Pleas, the Orphans' Court, Court of Quarter Sessions and Court of Special Sessions, shall apply to each of said courts when so held at the same time by said judges sitting separately, and the duties of the clerk, the sheriff, constables and other officers shall be, &c.

At the time of the passage of the County Park act in 1902 there was but one judge of the Court of Common Pleas in the County of Hudson. At the time of the appointment of a park commissioner made by Judges Blair and McCarthy on the one hand, and Judge Doherty on the other, there were three judges of that court in Hudson county, and the question is, is either of those appointments valid, and if so, which? We think that neither is, and this view sustains the trial judge's refusal to direct a verdict for respondent.

In the first place, the duty of the judges of the Court of Common Pleas to appoint county park commissioners is not a judicial duty. This power committed to the judges is to them merely *designatio personæ*. The statute confers upon those officials no authority except such as is expressly prescribed. They are to determine the political affiliations of the appointees and make the appointments. This is the entire scope and extent of the power conferred, and it is manifestly non-judicial. See *In re Margarum*, 55 *N. J. L.* 12; also *In re Prudential Ins. Co. of America*, 82 *N. J. Eq.* 335.

We are of opinion that the legislature could not possibly have had in contemplation such a situation as has arisen in this cause, namely, a clash between the judges over an ap-

pointment of a park commissioner, and an unseemly contention for possession of the office by the respective appointees.

Without the provisions of the act of 1918, that either·of the judges sitting alone, or each of them sitting separately at the same time, shall have and possess the same powers, authority and jurisdiction as are vested in the existing judges of the Common Pleas courts, the relator would have no standing whatever. It is pertinent to observe in this connection that the power to appoint park commissioners under the act of 1902 is confined to the *judge* of the Common Pleas, not to the court, which now has *three judges,* in Hudson county. This, we repeat, is not the delegation of judicial power, but a mere *designatio personœ* of the judge, now judges, to act. It is unlike the power delegated to the Court of Common Pleas by chapter 349 of the laws of 1920 (*Pamph. L., p.* 615), entitled "An act to regulate elections (Revision of 1920)," which, in article 11, section 26, provides that it shall be the duty of the justice of the Supreme Court assigned to hold the circuit and the judge or judges of the Court of Common Pleas, or one of the judges, to sit and hold a Court of Common Pleas, at the court house, for the purposes therein mentioned. There, in each instance, the power is committed to the court, and, although the power may not be. judicial, nevertheless, it is exercised in and by the court, and, therefore, the provision in the act of 1918 permitting the judges of the Court of Common Pleas to sit separately, doubtless applies.

The case at bar is not unlike that of *Gardner* v. *Brevis,* 95 *N. J. L.* 21, wherein Mr. Justice Swayze, in delivering the opinion of the Supreme Court, observed that the question involved was the title to office of members of the district election boards in Hudson county. In that case a list was filed by Judges Blair and McCarthy, and another one by Judge Doherty, upon the assumption that the county election board had failed to make selections. Said Mr. Justice Swayze (at *p.* 22): "In Hudson county there are three judges of the Court of Common Pleas. None of the lists were certified by all three. The appointments must be without warrant of law

unless a single judge can make them. In behalf of the district boards appointed by Judge Doherty, it is urged that he acting alone had authority under chapter 48 of the laws of 1918. *Pamph. L., p.* 137. This authority is claimed under section 2, which enacts that any power or authority now conferred by statute on the judge or judges of the Court of Common Pleas in any proceeding or matter may be exercised by either of said judges. The statute fails to point out any way of determining which of the three judges is to make the certificate in case they do not act together. The argument is that the judge who acts first has jurisdiction necessarily exclusive of the others. To this argument we cannot accede. It would tend to make a race between judges—an unseemly procedure. The legislature certainly contemplated an orderly and seemly procedure. The act of 1918 is a supplement to the act relating to the Court of Common Pleas. It was therefore on its face meant to regulate the procedure of a court, and the very essence of court procedure is order and regularity, notice and a chance to be heard. It is true that the question of jurisdiction may depend on priority, but it is never a priority based on a scramble by judges."

Now, while there was one judge there could be no dissention; but, when there came to be three judges, if, in any cause or matter they were required to act together, it would require a quorum to act. In the absence of any regulation in the organic law a majority of a body constitutes a quorum, and when such quorum is convened, a majority thereof can do any act within the power of the body. *Wells* v. *Rahway White Rubber Co.,* 19 *N. J. Eq.* 402. The constitution of 1844, in article 6, section 2, paragraph 1, provides that the Court of Errors and Appeals shall consist of the Chancellor, justices of the Supreme Court and six judges, or a major part of them. This latter provision is but a declaration of the parliamentary law of quorum, and there can be no doubt that without such a provision a majority of the members when convened would constitute a quorum. And it has been held that a majority of such quorum of the Court of Errors and Appeals can make a valid decision. *Clapp* v. *Ely,* 27

*N. J. L.* 622.   When the constitution was adopted, in 1844, there were five justices of the Supreme Court, making the total members of the Court of Errors and Appeals twelve, of which seven were a quorum.   When the decision in Clapp *v.* Ely was rendered in 1858, there were seven justices of the Supreme Court, making the total membership of the Court of Errors and Appeals fourteen, of which eight were a quorum.   The number constituting a quorum rose as membership in the court rose without constitutional action sanctioning it.   ·And, so, when the Hudson County Court of Common Pleas was increased from one to three judges, the power to appoint county park commissioners was by operation of law devolved upon the three judges in place of the one, and, where before there was no majority, or minority, or quorum, so to speak, then all three sprang into existence.

When, as now, we find the power to appoint park commissioners residing in the three judges, they must act as a body. Two being a quorum can, when convened, act in the premises, and a majority of a quorum, being necessarily two, could act and make a valid appointment.   As was aptly stated by Mr. Justice Swayze, in Gardner *v.* Brevis, the statute (1918) fails to point out any way of determining which of the three judges is to make a certificate (of members of· election boards) in case they do not act together, and that, as to the argument that the judge who acts first has jurisdiction necessarily exclusive of the others, the Supreme Court could not accede—so we cannot accede to that same argument made in the case at bar.   On the contrary, we hold that the power of appointment of park commissioners of Hudson county is now committed to the three judges of the Court of Common Pleas of that county, and that they must act as a body in the exer-· cise of the power.   A valid certificate would have to show that· the appointment was made by the three judges or a quorum when duly convened.   And we repeat that such a situation and such an outcome of it, as is above detailed, could never have been in the contemplation of· the legislative mind, and we are of opinion that had the legislature foreseen it they would have effectualy guarded against it.   Therefore, the true

rule of statutory construction applicable here is that stated by Chief Justice Beasley in *Schroder* v. *Ehlers,* 31 *N. J. L.* 44, wherein he said (at *p.* 50) : "The point before the court can be resolved by the use of the ordinary rules of statutory construction. It is a mere question of legislative intention, the simple inquiry being, did the legislature mean, when they said that a justice of the peace might commit on view, to authorize a person to adjudge a fine to himself for a trespass to his own farm? The language of the act is general, and the intention therefore of the law makers may be ascertained with peculiar propriety from the effects of the statute. The particular rule of construction applicable to this section of the act is the following, viz., that where some collateral matter, which is absurd and manifestly repugnant to common reason, arises out of the general words of a statute, the judges are to conclude that this consequence was not foreseen, and, as to it, to disregard the act. The illustration of this rule given by Blackstone, is the case now before the court. He says : 'Thus, if an act of parliament gives a man power to try all causes within the manor of Dale, yet if a cause should arise in which he himself is a party, the act is construed not to extend to that, because it is unreasonable that any man should determine his own quarrel.' 1 *Bl. Com.* 91. Construed in the light of this principle, the meaning of the clause of the act in question is too obvious to need further explanation." And Blackstone further says in the same connection that "where some collateral matter arises out of the general words, and happens to be unreasonable, there the judges are in decency to conclude that this consequence was not foreseen by the parliament, and, therefore, they are at liberty to expound the statute by equity, and only *quoad hoc* disregard it."

And, so, also, when a statutory power is exercised in a manner that could not have been within the contemplation of, and produces a result that could not have been foreseen by, the legislature, such exercise of power must be restrained within proper bounds by being held void in the circumstances and in the particular case *sub judice.*

We cannot conceive it possible for the legislature to have intended by the general words of the statute of 1918 that one judge in a county where three exist, should have the power to appoint a park commissioner to the exclusion of, and in opposition to, the other judges; and we hold that the general words of that statute committing to either of the judges of the Court of Common Pleas power vested in the existing judges of those courts, never contemplated disconcerted action by them, or the assumption of power by one to the exclusion of the others, without their consent, express or implied, but only contemplated the exercise of power by individual judges in an agreed-upon division of the work between them, as, for instance, like the division of work among the various parts of the Supreme Court, and the legislature never could have contemplated such action by the judges as this case has disclosed.

The views above expressed lead to the conclusion that both appointments before us are invalid, and that therefore there is a vacancy in the office.

The judgment under review must be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, ACKERSON, VAN BUSKIRK, JJ. 13.