Commonwealth ex rel. Maurer, District Attorney, Appellant, v. Burns.

Argued September 25, 1950. Before Drew, C. J., Stern, Stearne, Jones, Ladner and Chidsey, JJ.

*Philip Price*, with him *Elkins Wetherill*, and *William Barclay Lex*, for appellant.

*Joseph W. Henderson*, with him *Joseph H. Lieberman* and *Rawle & Henderson*, for appellee.

Opinion by Mr. Chief Justice Drew, November 13, 1950:

The sole question raised by this appeal is whether an appointment to the Board of Revision of Taxes of

Philadelphia County is valid when made by a majority of the judges of the courts of common pleas of that county without notice to all of such judges and without a meeting of them.

On June 20, 1950, a "round robin" purporting to appoint defendant, Joseph J. Burns, to the Board of Revision of Taxes of Philadelphia County was circulated among the judges of the courts of common pleas in that county. That paper was addressed to the Secretary of the Board of Judges and, after being signed by fifteen of the twenty judges, was forwarded to the addressee who then notified the proper persons of the appointment. Subsequently this action in quo warranto was instituted challenging the validity of the appointment, it being alleged in the complaint and not denied by the answer that the proposed appointment was not discussed at any meeting of the Board of Judges, that some judges had no opportunity to express their opinions of defendant's fitness for the office, and that one president judge had no knowledge of the circulation of this "round robin". By stipulation the case was heard on the pleadings. The learned court below, Judge KNIGHT specially presiding, held that the appointment of defendant was legal and this appeal followed.

Section 2 of the Act of June 27, 1939, P.L. 1199, provides that members of the Board of Revision of Taxes in counties of the first class shall be appointed "by a majority of the judges of the courts of common pleas of the county". The court below held that there was no attempt made by the legislature to control the method of ascertaining the will of the majority of the judges; and further that although the "round robin" was not the best and most appropriate method of filling the vacancy, it was a legal method. It is these rulings which are here challenged.

In considering the intention of the legislature in the Act of 1939, it should be remembered that the legisla-

ture was bestowing powers upon judges of our courts, and, although it did not specifically set forth the method of using that power, it can be assumed that the reason therefor grew out of the confidence that judges will scrupulously exhibit the highest standards of personal conduct.

The improvised expedient of a round robin—signed by fifteen of the twenty judges, the name of one being signed by proxy, with no one of the judges being given an opportunity to express his opinion as to the fitness of the appointee, and with one President Judge of said Courts, having no knowledge of the appointment until after it had been made, clearly does not satisfy the requirements of the Act.

As was said in the early case of *The People v. Batchelor*, 22 N.Y. 128, 134: "It would be absurd to hold that a portion only of those to whom a power of appointment is confided can get together and exercise the power without notice to their associates. It is not only a plain dictate of reason, but general rule of law, that no power or function entrusted to a body consisting of a number of persons, can be legally exercised without notice to all the members composing such body." See *Donohue v. Campbell*, 98 N.J.L. 755, 121 A. 700.

As said by BREWER, J., later Justice of the United States Supreme Court, in the case of *P. & F. R. Rly. Co. v. Comm'rs. of Anderson Co.*, 16 Kan. 302, 309: "Wherever a matter calls for the exercise of deliberation and judgment, it is right that all parties and interests to be affected by the result should have the benefit of the counsel and judgment of all the persons to whom has been intrusted the decision. It may be that all will not concur in the conclusion; but the information and counsel of each may well affect and modify the final judgment of the body."

Furthermore, we held in *Commonwealth ex rel. Claghorn v. Cullen*, 13 Pa. 132, that the procedure used in this case is invalid when attempted by a corporation. We there stated, at p. 143: "The private procurement of a written assent, signed by a majority of the members, will not supply the want of a meeting. Such an expedient deprives those interested of the benefit of mutual discussion, and subjects them to the hazard of fraudulent misrepresentation and undue influence." We further said, at p. 144: "The opportunity to deliberate, and, if possible, to convince their fellows, is the right of the minority, of which they cannot be deprived by the arbitrary will of the majority." Certainly, if the respect for the judiciary is to continue at its present high level, they must comply with the same rules that are imposed on private individuals and corporations.

We deem it proper to say that there is no intimation in this record that the judges acted in bad faith or from improper motives. Nevertheless, in this instance they have acted in an arbitrary manner contrary to law and their action cannot be sustained.

Judgment reversed.