BOYER, ET AL. *v.* THURSTON

[No. 42, September Term, 1967 (Adv.).]

*Decided June 30, 1967.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*Joseph S. Kaufman* and *Francis S. Brocato* for appellants.

*Edwin H. Miller* and *Omer T. Kaylor, Jr.,* with whom was *W. Warren Stultz* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

This appeal involves a determination of the validity of the appointment of G. Dennis Thurston, the appellee, as Clerk of the Circuit Court for Washington County in the place of G. Merlin Snyder, deceased.

The facts are not in dispute. G. Merlin Snyder was re-elected Clerk of the Circuit Court for Washington County for a term of four years at the General Election held on November 8, 1966, having defeated the appellee, Mr. Thurston, for the office of Clerk. He died on November 13, 1966, so that there was a vacancy in the office of Clerk. At the time of Mr. Snyder's death, Judge Irvine H. Rutledge, one of the judges of the Circuit Court for Washington County, residing in Washington County, was absent from Maryland. He returned to Washington County on November 20, 1966.

Prior to Judge Rutledge's return, Judge D. K. McLaughlin, the other judge of the Circuit Court for Washington County,

residing in Washington County, without prior consultation with Judge Rutledge, but after a conference with at least one other judge of the Fourth Judicial Circuit, which consists of Washington, Allegany and Garrett Counties, prepared an order naming Mr. Thurston as Clerk. This order was signed by Judge McLaughlin and was forwarded to the other judges of the Fourth Judicial Circuit not residing in Washington County for their signatures and concurrence.

On Monday, November 21, 1966, at a conference between Judges McLaughlin and Rutledge, Judge McLaughlin informed Judge Rutledge of the suggested appointment of Mr. Thurston as Clerk and also of the fact that an order had been prepared and forwarded to the judges of the Fourth Judicial Circuit who did not reside in Washington County for their concurrence and signatures, and that, as far as Judge McLaughlin knew, the order had been signed although it had not been returned to his possession. Judge Rutledge stated that this was not agreeable, that he had someone else in mind for appointment as clerk and would not concur in the appointment of Mr. Thurston. Judge Rutledge has never changed his position in this regard, but did not file a written dissent and has not filed any order relative to the appointment of a clerk.

An order, dated November 23, 1966, signed by Judge McLaughlin and the other judges of the Fourth Judicial Circuit —but not by Judge Rutledge—was received and filed by Judge McLaughlin on November 29, 1966. Mr. Thurston took the oath of office as Clerk the same day.

On December 9, 1966, the appellants, as citizens and taxpayers of Washington County, filed a petition for the issuance of a writ of mandamus commanding Mr. Thurston to vacate the office as Clerk and to cease in exercising the functions of Clerk in Washington County. Mr. Thurston filed a combined demurrer and answer on January 10, 1967.

Chief Judge Hammond of this Court designated Chief Judge Digges of the Seventh Judicial Circuit, to hear the case. The trial came on before Judge Digges on January 26, 1967, at which time an agreed statement of facts was signed by counsel for the respective parties and filed. On March 14, 1967, Judge Digges filed a comprehensive memorandum opinion and an or-

der denying the issuance of the writ of mandamus and dismissing the petition. An appeal was promptly taken from that order to this Court.

In addition to the facts already mentioned, the following facts were contained in the agreed statement of facts:

The records of the Circuit Courts for Somerset, Caroline, Baltimore, Howard and St. Mary's Counties indicate the following:

### First Judicial Circuit

"I. T. Phoebus appointed in Somerset County. Order signed 3-11-63 by all the Judges of the First Judicial Circuit."

### Second Judicial Circuit

"M. C. Butler appointed in Caroline County. Order signed 10-11-65 by all of the Judges of the Second Judicial Circuit."

### Third Judicial Circuit

"O. T. Gosnell appointed in Baltimore County. Order signed 8-9-65 by the Judges of the Circuit Court of Baltimore County (there being six Judges of the Circuit in Baltimore County and two in Harford)."

### Fifth Judicial Circuit

"W. H. Hill appointed in Howard County. Order signed 3-21-61 by all of the Judges of the Fifth Judicial Circuit. G. T. Cromwell appointed in Anne Arundel County. Order signed 6-30-55 by all Judges of the Fifth Judicial Circuit."

### Seventh Judicial Circuit

"M. B. Fowler appointed in St. Mary's County. Order signed 5-16-66 by all of the Judges of the Seventh Judicial Circuit."

At the time of each appointment above set forth, with the exception of the Baltimore County appointment, only one judge resided in the affected county, and the proposed appointment of the clerk to serve during the unexpired term had the approval of the resident judge as well as the other judges of the particular judicial circuit mentioned.

In Baltimore County, all six resident judges joined in the order of appointment to fill the vacancy, but without the approval of the other judges of the Third Judicial Circuit.

The resident judges of Washington County, without consultation with or concurrence of the remaining judges of the Fourth Judicial Circuit, have appointed all equity examiners and court auditors for the Circuit Court for Washington County.

In the Fourth Judicial Circuit there are rules applicable to all of the counties in the Circuit, generally referred to as Circuit Rules. These Circuit Rules have been submitted to, and have been approved by, all of the judges of the Fourth Judicial Circuit. In addition to the Circuit Rules, there are other rules, generally referred to as Local Rules, applicable to the Circuit Court for Washington County, which have been signed by only the judges of the Fourth Judicial Circuit residing in Washington County.

It was also stipulated, without agreement as to relevancy in the case, that the approval by the court of deputy clerks in the Circuit Court for Washington County as required by Article IV, section 26 of the Constitution of Maryland, has been accomplished by the signatures of the resident judges of Washington County, acting without the concurrence of the remaining judges of the Fourth Judicial Circuit.

At the trial in the lower court, it was conceded that mandamus was the proper legal remedy to challenge Mr. Thurston's title to his office as Clerk. The respondent-appellee in this Court did not question the right of the plaintiffs as taxpayers to bring the suit, even though they were not, and are not, contestants for the office of clerk.

There are two questions presented to us for decision:

1. Under Article IV, section 25 of the Maryland Constitution, may a majority of all of the judges of the Fourth Judicial Circuit name a successor clerk for the Circuit Court for Washington County or may only the resident judges of the Circuit Court for Washington County make the appointment?

2. If the appointment is confined to the resident judges of the Circuit Court for Washington County, may the appointment be made by one of such judges without the approval and concurrence of the other?

## 1.

Judges Digges held that a majority of all of the judges of the Fourth Judicial Circuit had the authority to name the successor clerk and that Mr. Thurston had been validly appointed to fill the remainder of the term as Clerk. We do not agree with his conclusion.

Article IV of the Maryland Constitution provides for the Judiciary Department of the State government. Section 20 of that Article stated, in relevant part, as follows:

> "A Court shall be held in each County of the State, to be styled the Circuit Court for the County, in which it may be held."

Section 25 provides in relevant part:

> "There shall be a Clerk of the Circuit Court for each County, who shall be elected by a plurality of the qualified voters of said County, and shall hold his office for four years from the time of his election, and until his successor is elected and qualified, and be re-eligible, * * *. In case of a vacancy in the office of Clerk of a Circuit Court, the *Judges of said Court* shall have power to fill such vacancy until the general election for Delegates to the General Assembly, to be held next thereafter, when a successor shall be elected for the term of four years." (Emphasis supplied).

It seems clear that the "Judges of said Court" describe the judges of the court for which the clerk is to be appointed; i.e., the court for the particular county in which the office of clerk becomes vacant.

The question then arises in regard to who are the "Judges of said Court." This question is determined by a consideration of section 21 of Article IV.

It is important to observe that in the Constitution as it was adopted in 1867, judges were elected from their respective judicial circuits by the qualified voters of the entire circuit. There was then no constitutional requirement that one judge should be selected from any particular county. Section 21 provided for the number of judges in each judicial circuit, one of

whom should be chief judge. The provision for a chief judge of the respective circuits was important because, pursuant to Article IV, section 14, the chief judge of each judicial circuit, with one elected member of the Court of Appeals from the Eighth Circuit, constituted the Court of Appeals. The system of having a judge of the Court of Appeals from each of the seven judicial circuits was abolished by the amendment to section 14 in November, 1944, when the present system of appellate judicial circuits was adopted with appropriate provisions for appointment and election from those appellate judicial circuits.

There was a most significant change in section 21 by amendment in 1953. Section 21, as amended, now provides, in relevant part, as follows:

"From and after January 1, 1955, there shall be in the third, fourth, fifth, sixth and seventh circuits at least one *judge for each county, who shall be a resident of the county in which he shall hold office, and who shall be elected by the voters thereof,* to be styled judges of the Circuit Court, to be elected or appointed as herein provided. The number of judges for any of the circuits or for any of the counties, may be increased or decreased by the General Assembly from time to time, and any vacancy so created shall be filled as provided in Section 5 of this Article except that in the third, fourth, fifth, sixth and seventh judicial circuits there shall never be less than one judge for each county and in all of the circuits there shall never be less than four for each circuit." (Emphasis supplied).

The amendment had an important effect on the nature of judicial offices in the five judicial circuits mentioned. The circuit judges no longer held office *at large* within the judicial circuits, but hold office within the particular county in which they reside, and are elected to office by the qualified voters *of each county,* rather than by the voters of the entire judicial circuit as previously provided. This amendment did not deprive the judges in the five judicial circuits mentioned from having *jurisdiction* throughout the boundary of their respective judicial

circuits, but after the amendment, each judge *held office* within the county in which he was a resident and for the individual Circuit Court in which he usually presided.

This significant change in the Maryland judicial system was commented upon by Professor Robert G. Dixon, Associate Professor of Government and Politics at the University of Maryland, in his article, *Judicial Administration in Maryland—The Administrative Office of the Courts,* 16 Md. L. Rev. 95, 116n (1956) as follows:

"At the Circuit level one judge is a quorum. Therefore, the so-called Circuit Courts for the counties tend to operate like separate county courts. A judge of a given circuit sits primarily in the county of his residence as the 'Circuit Court' for that county. This 'county court' aspect of the Circuit system is reinforced (1) by having a separate, locally elected clerk in each county and (2) by specifying that in the Third through the Seventh Circuits 'there shall never be less than one judge for each county', to be elected on a county basis rather than on a circuit-wide basis. Md. Const., Art. IV, §21, as amended in 1944 and in 1954. [1953, ratified in 1954]."

See also Byrd, *The Judicial Process in Maryland,* pages 39-40 (1961).

The 1953 amendment to section 21 also significantly provided:

"In the event and to the extent of any inconsistency between the provisions of any section amended or added by these amendments and any of the other provisions of this Constitution or the provisions of any existing law, the provisions of the sections amended or added shall prevail, and such other provisions shall be repealed or abrogated to the extent of such inconsistency, * * *."

In our opinion, this provision effectively resulted in a change in the meaning of the words "Judges of said Court" in section 25 of Article IV. Prior to the 1953 amendment the words, of necessity, meant the judges of the respective judicial circuits;

after the amendment changing the holding of *judicial office* from a judicial circuit to a *county basis,* they meant the resident judge or judges in each county. This construction makes the provisions of section 25 *consistent* with the new provisions of section 21, as amended, and, as indicated, the 1953 amendment requires that its terms shall prevail over any prior inconsistency.

This interpretation is also consistent with other provisions of the Constitution and the established practice in regard to the appointment of other court officials. Article IV, section 9 provides, in part, that "The Judge, or Judges of any Court, may appoint such officers for their respective Courts as may be found necessary; * * *." The stipulated facts establish that the resident judges of Washington County, without consultation with, or concurrence of, the remaining judges of the Fourth Judicial Circuit, have appointed all equity examiners and court auditors for the Circuit Court for Washington County.

In Article IV, section 26, the following is provided:

> "The said Clerk shall appoint, subject to the *confirmation of the Judges of their respective Courts,* as many deputies under them, as said Judges shall deem necessary, to perform, together with themselves, the duties of said office, who shall be removable by the said Judges for incompetency, or neglect of duty, and whose compensation shall be according to existing, or future provisions of the General Assembly." (Emphasis supplied).

Here again the fact is established that the approval of deputy clerks in the Circuit Court for Washington County pursuant to section 26 has been accomplished by the signatures of the resident judges of Washington County, acting without the concurrence of the remaining judges of the Fourth Judicial Circuit.

In the State's testamentary system, the Register of Wills, who is the "Clerk" of the Orphans' Courts, is elected by the electors in his respective county or in Baltimore City and, in the event of a vacancy in that office, Article IV, section 41 provides that "said vacancy shall be filled by the Judges of the Orphans' Court in which such vacancy appears * * *." The

filling of a vacancy in the office of Register of Wills is upon a county basis.

Article V, section 7 of the Maryland Constitution provides for the election of a State's Attorney in each county and in Baltimore City. Article V, section 11 provides that in the event of a vacancy in the office of State's Attorney "the said vacancy shall be filled by the Judge or Judges resident in the county or, if there be no resident Judge, the Judge or Judges having jurisdiction in the Circuit Court of the county in which the vacancy occurs, * * *." This section of Article V was amended in 1957 to change the words "Judge of the county or city respectively having criminal jurisdiction," to the present language of that clause. In 1959 the section was further amended to add the words "or, if there be no resident Judge, the Judge or Judges" etc., so that the section then read as above first set forth. These amendments reinforce the principle generally prevailing throughout the Maryland Constitution, that appointments of court officers are to be made by the judge, or judges, of the local county courts in which they serve, unless there is a specific provision made for their selection in a different manner. The 1957 amendment also recognizes the distinction between a judge resident in a county and thereby holding office in that county and judges "having jurisdiction" in the Circuit Court of the county.

There has been a legislative and administrative recognition that the judges for the Circuit Court for Washington County are the two resident judges in that county. By Chapter 446 of the Acts of 1965, a new section 48 was added to Article 26 of the Maryland Code, providing that the County Commissioners of Washington County supplement the salaries for each of the judges of the "Circuit Court for Washington County" in the amount of $2,500. Judge Digges pointed out in his memorandum opinion that the County Commissioners of Washington County have paid this supplementation only to the two resident judges of Washington County. Judge Digges suggested that the other judges in the Fourth Judicial Circuit might also be entitled to the $2,500 supplementation. This is a happy thought, but we think it is not well founded when one considers that prior to the enactment of Chapter 446 of the Acts of 1965, Article 26, section 48, provided for supplementation of the sal-

aries of each of the judges of the Circuit Court for Allegany County, each of the judges for the Circuit Court for Washington County and of the judge for the Circuit Court for Garrett County. It is clear from the title to Chapter 446 of the Acts of 1965 that the purpose of the Act was "to remove the supplementation payment requirements imposed on the County Commissioners of Allegany, Garrett and Washington Counties with respect to the various circuit court judges of said counties and to increase the salaries of the judges of the Circuit Court for Washington County." The Act then provides:

"Section 1 * * *

"48. Notwithstanding any other provision of this subtitle and in addition to any other annual salary, payment, or supplementation thereof, the County Commissioners of Washington County are hereby authorized and directed to pay to each of the several judges of the Circuit Court for Washington County two thousand five hundred dollars ($2,500.00) annually.

"Section 2 * * * That it is the intent of the Legislature that the several judges of the Circuit Court for Washington County are to receive as salary the total sum of twenty-two thousand five hundred dollars ($22,500.00) annually."

In the view of the provisions of section 48 and the provisions of the Title to Chapter 446 of the Acts of 1965, the General Assembly has clearly distinguished between the judges for the Circuit Courts for Allegany and Garrett Counties on the one hand, and the judges of the Circuit Court for Washington County on the other. The administrative interpretation of the legislation appears to be the correct one.

The appellee urges that since 1955 the courts have interpreted section 25 as requiring the appointment of a clerk when a vacancy occurred by the judges of the judicial circuit rather than by the resident judge or judges of the Circuit Court for the county in which the vacancy occurred, and that this interpretation is entitled to great weight. There have been six vacancies in the office of clerks of Circuit Courts since 1955 which have been filled pursuant to section 25 of Article IV. These

have already been listed above. It should be observed that two of these appointments occurred in the First and Second Judicial Circuits. In those judicial circuits, there is no constitutional requirement that there be a resident judge for each county. It should be pointed out, however, that in fact there were resident judges in each county in those two judicial circuits when the appointments were made, and the appointments of the clerks were signed by the resident judges of the circuit courts. for the counties in which each vacancy occurred. In the Fifth Judicial Circuit, the offices of Clerk for Howard and Anne Arundel Counties were filled in 1961 and 1955, respectively. In each instance all of the judges of the judicial circuit joined in signing the orders for appointment. In 1966, a vacancy in the office of Clerk for the Circuit Court for St. Mary's County was filled by an order signed by all of the judges of the Seventh Judicial Circuit, which, of course, also included the signature of the resident judge for St. Mary's County. In 1965, however, only the resident judges for the Circuit Court for Baltimore County signed the order to fill a vacancy in the office of Clerk for the Circuit Court for that county. The Chief Judge of the Third Judicial Circuit and another judge, both resident in Harford County, did not confirm the appointment or sign the order making the appointment.

Under these circumstances it cannot be said that there has been any consistent contemporaneous construction of section 25 that the appointment of a clerk of the circuit court for a county *must* be made by a majority of the judges of the judicial circuit in which the county is situate, rather than by the judges who reside in that county. We are of the opinion that the practice in five instances indicated the exercise of "abundant caution" on the part of the judges, so that the appointment would be valid under either interpretation. The Baltimore County appointment is rather more consistent with the position that the resident judges of the county make the appointment, although even here, the resident judges of Baltimore County constituted a majority of the judges of the Third Judicial Circuit.

Where the language of the Constitution is susceptible of a broader or even different meaning from the meaning generally used at the time of the adoption of the Constitution, our pre-

decessors have held that "The meaning of the Constitution is not restricted to the meaning of particular words as they were understood at the time of its adoption." *Clauss v. Board of Education of Anne Arundel County*, 181 Md. 513, 523, 30 A. 2d 779 (1943). Chief Judge Ogle Marbury, for the Court, in *Johns Hopkins Univ. v. Williams*, 199 Md. 382, 386, 86 A. 2d 892 (1952) aptly stated:

> "It has been said by this court that the rule which above all others gives life to the written law and makes its use possible for the government and control of men in carrying on the actual business of life is that, 'while the principles of the Constitution are unchangeable, in interpreting the language by which they are expressed it will be given a meaning which will permit the application of those principles to changes in the economic, social, and political life of the people, which the framers did not and could not foresee. * * * In determining the true meaning of the language used, the courts may consider the mischief at which the provision was aimed, the remedy, the temper and spirit of the people at the time it was framed, the common usage well known to the people, and the history of the growth or evolution of the particular provision under consideration. * * *, *Norris v. Mayor and City Council of Baltimore*, 172 Md. 667, 675, 676, 192 A. 531, 535."

In the present case the language of section 25 of Article IV of the Constitution—"Judges of said [Circuit] Court" in which the vacancy of a clerk occurred—is susceptible of either meaning of the two meanings urged upon us in this case. When the Constitution was adopted, the language was understood to mean those judges who had jurisdiction in the particular circuit court, as in many counties there was no resident judge. However, when the Constitution was amended in 1953, and each county in all judicial circuits other than the First and Second was assigned one or more resident judges who held office in the circuit court for that county, then the words mentioned took on the meaning that the resident judges holding office in the circuit court when the vacancy occurred were empowered to make the

appointment. This interpretation is not only in accordance with the holdings in the *Clauss* and *Williams* cases, but is indicated by the provision in the amendment of 1953 which requires that the purposes of the constitutional amendment prevail if there is any inconsistency between those provisions and any existing provision of the Constitution.

Then too, our interpretation of the provisions of section 25 removes any possible conflict between the provisions of section 25 and section 21, as amended, and reconciles and makes consistent all of the relevant constitutional provisions. Our predecessors have indicated that we should seek to harmonize seemingly different provisions of the Constitution. In *Reed v. McKeldin*, 207 Md. 553, 561, 115 A. 2d 281 (1955), Judge Delaplaine, for the Court, stated:

"In construing the Constitution, where different parts of it seem to conflict, the Court must harmonize the different provisions if possible, and lean in favor of that construction which will render all words operative, rather than the construction which may make some words nugatory. In case of ambiguity, the whole Constitution is to be examined in order to determine the meaning of any part, and that construction should be given which will give effect to the entire instrument, and not raise any conflict between its parts which can be avoided."

Our interpretation of section 25 makes consistent all of the provisions of the Constitution relating to the approval of deputy clerks, the appointment of state's attorneys when vacancies occur and similar appointments of other court officials. The judges who are elected by the same electorate and who hold office in the same circuit court, appoint the clerk of that circuit court when a vacancy occurs.

## 2.

It was not necessary for Judge Digges to pass upon the second question presented to us, i.e., whether the appointment could be made by one judge of the two resident judges. He indicated, however, in his memorandum opinion that the provision of Article IV, section 21 of the Constitution which pro-

vides that "one judge in each of the first seven circuits shall constitute a quorum for the transaction of any business" might well have given Judge McLaughlin the power to make the appointment notwithstanding the refusal of Judge Rutledge to concur in that appointment. We disagree.

The words "transaction of any business" mean the transaction of any *judicial* business of the courts, and this definition accords with the uniform practice of the courts. The appointment of a clerk to fill a vacancy is in the nature of an executive function and section 25 of Article IV specifically confers this function on "the Judges of said Court"—not on *one of the* judges of the court. In no instance has the appointment of a clerk been made by *one judge* if there was more than one judge involved. As we have indicated, in all instances of appointments of clerks, the appointments have been made by a majority of the judges of the circuit—including the judge or judges of the circuit court for the county where the vacancy existed—or by a majority of the judges of the circuit court for the county where the vacancy existed. The practice of appointment by a majority of the judges involved has been uniform and consistent. This is persuasive on the proper interpretation of the number of judges required to concur in the appointment. See *Johns Hopkins Univ. v. Williams, supra.*

Our predecessors in *Beasley v. Ridout,* 94 Md. 641, 659, 52 Atl. 61 (1902), indicated that our construction is correct. In *Beasley,* the Court had before it the validity of chapter 15 of the Acts of 1901 which provided that the judges of the Fifth Judicial Circuit should appoint three persons, who with the state's attorney and a physician selected by them, should constitute the visitors to the jail. Although the Court declared the Act unconstitutional as violating Article 8 of the Declaration of Rights providing for the "separation of powers" as an attempt to confer non-judicial powers upon the Court, Judge Pearce, for the Court, stated:

"It [the Act] requires the appointments to be made by 'the Judges of the Fifth Judicial Circuit,' which requires that at least a majority, if not all of them, must unite in making the appointments. 'Were this duty judicial, one Judge would have under the Con-

stitution, as much authority to discharge it as a majority (or all) would possess, because sec. 21, Art. 4 of the Constitution provides that one Judge in each circuit shall constitute a quorum for the transaction of any business.' And our decisions, which precede that case, are clear that Judges cannot be compelled to perform services not of a judicial nature."

In the present case, the power of appointment of a clerk although executive in nature is specifically conferred upon the "Judges of said Court" by the Constitution itself and is, of course, properly exercised by the judges notwithstanding the provisions of Article 8 of the Declaration of Rights, as the specific provisions of Article IV, section 25 prevail over the general provisions of Article 8 of the Declaration of Rights. See *Anderson v. Baker,* 23 Md. 531, 628 (1865).

It seems clear that the appointment of a clerk is not judicial business in the ordinary use of those words, but is in the nature of an executive act in which all the judges having the appointing power must participate and a majority concur.

The cases from other jurisdictions indicate that the appointment of court officers has been considered as an executive rather than a judicial function and such an appointment is not a judicial act. See *Daly v. Hemphill,* 411 Pa. 263, 191 A. 2d 835 (1963).

The *Daly* case involved the power of the Chief Magistrate of the City of Philadelphia to appoint various employees in the Magistrate's Court and the Traffic Court pursuant to a statute conferring the power of appointment upon him. Mr. Justice Roberts, for the Supreme Court of Pennsylvania, stated:

> "The power of appointment is intrinsically and historically an executive function. See e. g., *Municipality of St. Thomas & St. John v. Gordon,* 78 F. Supp. 440 (D.V.I. 1948) ; *Tucker v. State,* 218 Ind. 614, 35 N. E. 2d 270 (1941) ; *Taylor v. Commonwealth,* 26 Ky., 401, 3 J. J. Marshall (1830) ; *In re Opinion of the Justices,* 303 Mass. 615, 21 N. E. 2d 551 (1939) ; *State ex rel. Johnson v. Myers,* 74 N. D. 678, 19 N. W. 2d 745 (1945)." (411 Pa. at 270, 191 A. 2d at 840).

See also *Donohue v. Campbell,* 98 N. J. Law 755, 121 Atl. 700 (1923).

It has also been generally held that provisions which vest the appointing power of clerks in "judges" of a particular court, if there is more than one judge in that court, require the concurrence of a majority of the judges for a valid appointment. See *In re Pringle,* 22 Haw. 557, 565 (1915); *State, ex rel. Goodin v. Este,* 7 Ohio 134 (1835); *Donohue v. Campbell, supra.*

The appellee contends that if both judges are required to concur, they may not be able to agree and the vacancy could not be filled, as this case suggests. We cannot assume that Judges McLaughlin and Rutledge will not perform their Constitutional duty and be able to agree upon a suitable person other than the appellee for appointment as clerk. If this unlikely happening should occur, the Deputy Clerk for the Circuit Court for Washington County would continue to act as Clerk until a new clerk is elected at the next election.

We hold that no appointment of clerk can be made to fill the vacancy in that office in the Circuit Court for Washington County without the concurrence of both Judges McLaughlin and Rutledge. As the appellee has not had that concurrence, his appointment was null and void and the writ of mandamus should have been issued as prayed.

> *Order of March 13, 1967, filed in the lower court on March 14, 1967, reversed and case remanded to the lower court with directions to issue the writ of mandamus directed to the appellee, G. Dennis Thurston, commanding him to vacate the office of Clerk of the Circuit Court for Washington County and to cease in exercising the functions of the office of Clerk of the Circuit Court for Washington County, the costs to be paid by the appellee.*